UNITED STATES of America, Plaintiff–Appellee,

v.

David MARTINEZ, Defendant–Appellant.

No. 99–50659.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 10, 2000

Filed Nov. 16, 2000

---

**2.** *See, e.g., Bins v. Exxon Co.*, 220 F.3d 1042, 1053–54 (9th Cir.2000) (en banc) (rejecting just such an attempt).

Shereen J. Charlick, Federal Defenders of San Diego, Inc., for defendant-appellant David Martinez.

Gregory A. Vega, United States Attorney, Southern District of California, Bruce R. Castetter, Chief, Appellate Section, and Cynthia Bashant, Assistant United States Attorney, San Diego, California, for appellee the United States of America.

Before: BOOCHEVER, TROTT, BERZON, Circuit Judges.

BERZON, Circuit Judge:

David Martinez appeals his sentence following conviction for importation of marijuana, in violation of 21 U.S.C. §§ 952 and 960. Martinez argues that the Government failed to prove both that he imported more than fifty kilograms of marijuana and that he had the two predicate "controlled substance" convictions that would make him a "career offender" under the United States Sentencing Guidelines ("U.S.S.G.").

## I. Background

Border agents stopped Martinez on February 11, 1999 at the San Ysidro Port of Entry and discovered, concealed in the truck that he was driving, 22 packages of marijuana with a gross combined weight of 60.6 kilograms. The packages were secured by duct tape and covered in grease.

The prosecution filed a two-count indictment on March 10, 1999, charging Martinez with importation and possession with intent to distribute approximately 60.6 kilograms of marijuana, in violation of 21 U.S.C. §§ 952, 960, and 841(a)(1). On May 5, 1999, Martinez filed a motion to compel the preservation of evidence. For purposes of that motion, Martinez assumed, without admitting, the truth of the complaint's statement of facts, including the quantity of marijuana found, but reserved "the right to take a contrary position at motions hearing or at trial." In its response to Martinez's motion, the Government agreed to preserve the marijuana evidence. Martinez withdrew his motion on May 10, 1999, and pled guilty without a plea agreement to one count of marijuana importation.

At the plea hearing, the district court informed Martinez that, based upon the weight of the marijuana involved, he faced a maximum penalty of twenty years imprisonment. Martinez stated that he understood that. The court then asked him, "[a]s a factual basis for your plea ... did you intentionally bring approximately 60 kilograms of marijuana into the United States?," and Martinez responded "[y]es." Martinez then pled guilty to "knowingly and intentionally import[ing] approximately 60.6 kilograms of marijuana, a Schedule I controlled substance."

The Presentence Report ("PSR") recommended a ten percent reduction in the quantity of marijuana, to account for the weight of the marijuana's packaging. With the ten percent reduction, the PSR calculated the net weight at 54.4 kilograms. Section 2D1.1(c)(10) of the Guidelines prescribes a base offense level of 20 for importation of between 40 and 60 kilograms net of marijuana, so the PSR began its computation of Martinez's sentence at that level. The PSR also concluded, however, that Martinez should be sentenced as a "career offender," pursuant to U.S.S.G. §§ 4B1.1 and 4B1.2, based on his 1990 California conviction for "Possession of Marijuana For Sale," and his 1996 California conviction for, as the PSR described it, "Importation of More Than 28.5 grams of Marijuana into California."

If a district court finds that a defendant should be classified as a career offender, the career offender section of the Guidelines mandates enhancements to the defendant's base offense level, pegging the precise enhanced base level to the statutory maximum punishment applicable to the offense currently before the court for sentencing. Because the importation of between 50–100 kilograms of marijuana carries with it a statutory maximum sentence of twenty years, see 21 U.S.C. § 960(b)(3), the career offender finding necessarily increased Martinez's base offense level to 32. See U.S.S.G. § 4B1.1(C).

Although he had pled guilty based on approximately 60 kilograms of marijuana, Martinez objected—for purposes of the sentencing calculation—both to the amount of marijuana attributed to him in the PSR and to the PSR's conclusion that his 1996

California conviction for violating California Health & Safety Code § 11360(a) ("Section 11360(a)") qualified under U.S.S.G. § 4B1.2(b) as a "controlled substance" offense that could be counted toward career offender status. Relying on the "standard" ten percent packaging reduction recommended by the PSR and Martinez's statements at his plea hearing about the quantity of drugs he had imported, the district court found that Martinez had imported over 50 kilograms of marijuana.

On the career criminal issue, the court determined that Martinez could be classified as a career offender, deeming his 1996 conviction a predicate controlled substance offense. In reaching this conclusion, the court looked to the language of Section 11360(a), and to the "Abstract of Judgment" and a plea form from the 1996 conviction. Relying in particular on the fact that in the plea form Martinez had written, "I've transported marijuana across the border," and over Martinez's objection that "border" could have meant a non-international border, the district court found that the conviction "for transportation, importation of marijuana, in violation of ... Section 11360(a) ... does qualify as a predicate" offense under the career offender provision of the Guidelines, because it involved "import[ing]" marijuana within the meaning of U.S.S.G. § 4B1.2(b).

In sentencing Martinez, the district court accepted the PSR's conclusions with respect to the effect of the career offender status on Martinez's base offense level, and set that level at 32. The court then deducted three levels for Martinez's acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, and two levels for "the totality of the circumstances," resulting in an adjusted offense level of 27. Although the career offender Guideline mandated a criminal history category of VI, the district court downwardly departed to a category of III, placing Martinez in a Guideline range of 87 to 108 months. The court ultimately sentenced Martinez to the lowest end of that range; 87 months.

On appeal, Martinez argues that the Government failed to prove both that his 1996 California conviction qualifies as a predicate offense for career offender status under U.S.S.G. § 4B1.1 and that he imported more than 50 kilograms of marijuana.[1] If Martinez is right, he could have been sentenced to as few as 24 months in prison.[2]

## II.   Career Offender Status

■ To be deemed a career offender under the Guidelines, (1) a defendant must have been at least eighteen years old at the time he committed the offense for which he is being sentenced, (2) that offense must be a felony that is either a crime of violence or a controlled substance

---

1.  Martinez further contends that the Supreme Court's recent decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), required the Government to charge in the indictment, submit to a jury, and prove beyond a reasonable doubt that he imported more than 50 kilograms of marijuana. We need not reach the *Apprendi* issue at this stage, however, because until Martinez is resentenced, we have no way of knowing whether the alleged violation prejudiced him. If on resentencing Martinez were sentenced to less than five years—the statutory maximum for fewer than 50 kilograms of marijuana—then the alleged Apprendi error would have caused him no prejudice. *See United States v. Scheele*, 231 F.3d 492 (9th Cir.2000)

(holding that claimed *Apprendi* error regarding drug quantity need not be considered where defendant was sentenced to less than the statutory maximum sentence for the quantity which he acknowledged).

2.  Martinez's base offense level without the career criminal enhancement was 20, and the district court used a criminal history category of III, rejecting the government's recommended level of IV. Thus, assuming that the district court would have used the same offense level adjustments (−3 for acceptance of responsibility and −2 for "totality of the circumstances")—which of course, may not be the case—the offense level would have been 15, for which the guideline range is 24–30 months.

offense, and (3) the defendant must have at least two prior felony convictions for either a crime of violence or a controlled substance offense. *See* U.S.S.G. § 4B1.1.

Only factor three is at issue here. Under the Guidelines, a "controlled substances" offense is

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, *import*, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b) (emphasis added). The government here contends, and the district court held, that Martinez's 1996 California conviction was for "import[ing]" marijuana, and therefore comes within the controlled substance definition. Martinez maintains, however, that he was convicted only for transporting marijuana, not for importing it, so that the 1996 conviction does not count for purposes of the career criminal enhancement.

To resolve this dispute, we must determine, first, the scope of the "import" category of offenses in the controlled substance definition, and second, whether Martinez's 1996 California conviction comes within that definition.

■ *A. The controlled substance offense definition:* In determining whether a state conviction counts as a predicate for a career offender enhancement, a federal sentencing enhancement provision such as the career criminal guideline here at issue is interpreted according to a uniform, national definition, not dependent upon the vagaries of state law. *See Taylor v. United States,* 495 U.S. 575, 591–92, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). This single-definition approach rests centrally on the consideration that " 'application of federal legislation is nationwide and at times the federal program would be impaired if state

law were to control.' " *Id.* at 591, 110 S.Ct. 2143, *quoting United States v. Turley,* 352 U.S. 407, 411, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957).

In *Taylor,* for example, the issue was whether a state burglary conviction counted as a predicate offense under 18 U.S.C. § 924(e), which provides for an enhanced sentence for felons convicted of possessing a firearm where their prior felony conviction was for, inter alia, "burglary." To decide that question, the Court first had to arrive at a discrete *federal* definition of "burglary" under § 924(e), for only then could the Court determine whether the state conviction would constitute "burglary" under the federal statute. *See id.* at 592–99, 110 S.Ct. 2143. Otherwise, "a person imprudent enough to shoplift or steal from an automobile in California would be found ... to have committed a burglary ... for enhancement purposes—yet a person who did so in Michigan might not." *Taylor,* 495 U.S. at 591, 110 S.Ct. 2143.

In this case, applying the *Taylor* single definition approach, we must first determine, de novo (*see United States v. Becker,* 919 F.2d 568, 570 (9th Cir.1990)), what "import" means under U.S.S.G. § 4B1.2(b).

■ "Import" in the controlled substances definition of § 4B1.2(b), on which the Guidelines career offender provision, U.S.S.G. § 4B1.1, depends, must necessarily mean importing across an international border. "Import" means to bring from another place to this place. *See* 7 *Oxford English Dictionary* 727 (2d ed.1989) ("To bring in; to introduce from a foreign or external source...."). Common sense dictates that when a federal statute is concerned, "this place" must be the nation as a whole, not some subdivision thereof.

The United States Code supports this interpretation. The federal statute proscribing drug importation (entitled "Importation of controlled substances"), 21 U.S.C. § 952, unambiguously states that "[i]t shall be unlawful to import into the customs territory of the United States

*from any place outside thereof* ..., or to import into the United States *from any place outside thereof,*" certain designated controlled substances. *Id.* (emphases added). The statutory language of § 952 indicates, unsurprisingly, that Congress conceives of the crime of importation as requiring international movement of drugs. We see no reason to construe the Guidelines provision at issue here any differently.

We cannot tell from the statute, and have found no cases that discuss, whether the phrase "imports into this state," as used in Section 11360, also connotes carrying the drugs across an international border, as opposed to carrying them across a state border. But even if the latter definition was what the California legislature had in mind—which we doubt—it would not matter, because, as *Taylor* counsels, it is the federal definition that controls in applying federal recidivism statutes such as the career criminal offender guideline.

■ *B. Applying the "import" definition to Cal. Health & Safety Code § 11360(a):* We take a "categorical approach" to determining whether a prior conviction supports career offender status, looking to the statutory definition of the crime rather than to the defendant's specific conduct. *Taylor,* 495 U.S. at 600, 110 S.Ct. 2143; *United States v. Bonat,* 106 F.3d 1472, 1475 (9th Cir.1997). In addition to the statutory definition, we may also examine certain documents or judicially noticeable facts—such as the indictment, the judgment of conviction, jury instructions, a signed guilty plea, and the transcript from the plea proceedings—that might illuminate whether the offense counts as a predicate conviction for enhancement purposes. *See id.* at 1476; *see also Taylor,* 495 U.S. at 602, 110 S.Ct. 2143; *United States v. Riley,* 183 F.3d 1155, 1158 n. 6 (9th Cir.1999) (considering "actual charged conduct in the count of

which the defendant was convicted"); *United States v. Parker,* 5 F.3d 1322, 1327 (9th Cir.1993) (considering judgment of conviction, charging paper and signed plea). If, however, the statute under which the defendant was previously prosecuted and the judicially noticeable facts would allow the defendant to be convicted of an offense other than that defined as a qualifying offense by the Guidelines, the categorical approach precludes counting the prior conviction toward career offender status. *See Bonat,* 106 F.3d at 1475; *see also United States v. Weekley,* 24 F.3d 1125, 1126–27 (9th Cir.1994) (holding that the defendant could not be sentenced as a career offender because Washington's attempt statute, under which the defendant had been convicted, proscribed more conduct than was defined in 18 U.S.C. § 924(e)).

■ As the categorical approach dictates, we begin with the state statute. Section 11360(a) provides:

> Except as otherwise provided by this section or as authorized by law, every person who transports, *imports into this state,* sells, furnishes, administers, or gives away, or offers to transport, import into this state, sell, furnish, administer, or give away, or attempts to import into this state or transport any marijuana shall be punished by imprisonment in the state prison for a period of two, three or four years.

Cal. Health & Safety Code § 11360(a) (emphasis added). Martinez argues that his 1996 California conviction under § 11360(a) does not qualify as a "controlled substance offense" as defined in the Guidelines because, he asserts, he was convicted only of transportation, rather than importation, of marijuana, and transportation of marijuana, without more, is not within the relevant controlled substance offense definition.[3] *See United States v.*

---

**3.** There is no contention that Martinez's 1996 conviction involved "manufacture ... export, distribution, or dispensing" of a controlled

substance (or possessing a controlled substance with intent to do any of those things), the other categories of offenses that can give

*Casarez–Bravo,* 181 F.3d 1074, 1077–78 (9th Cir.1999) (holding that because conviction under Section 11360(a) can be for transportation of marijuana for personal use, the mere fact of conviction under that statute would not necessarily qualify as conviction of a controlled substance offense under the Guidelines). The district judge, however, viewed Martinez's conviction as a conviction for an importing offense.

A conviction for importing marijuana into California under the California statute would, we may assume for present purposes, suffice as a conviction for importing a controlled substance under the career criminal guideline.[4] Section 11360, however, covers both transporting and importing. And "transports" in this state statute *cannot* include as a necessary element importing across an international border, both as a matter of plain language— "transport" does not connote travel across a border—and because Section 11360(a) also includes "imports into California," indicating that the California legislature understood that the two concepts are distinct. Accordingly, "transports" in the context of the California statute must have a different meaning than "imports."

The Government maintains, however, that the judicially noticeable documents show that Martinez was actually convicted for importing, not transporting, marijuana. The complaint filed on the Section 11360(a) charge did allege that Martinez "did unlawfully import into this state, transport, offer, and attempt to import into this state and transport more than 28.5 grams of marijuana." In addition, the Government

stresses that in Martinez's plea form he scrawled "I transported marijuana across border."

While Martinez may have been charged with importation, there are no judicially noticeable facts demonstrating he was *convicted* of that charge. Instead, he pled guilty to, and was convicted of: (a) as indicated in a handwritten entry on the plea form, "S. 11360: transportation of marijuana," and notably (b) as typed in the judgment after the pre-printed query "DEFENDANT WAS CONVICTED OF THE COMMISSION OF THE FOLLOWING FELONY (OR ALTERNATE FELONY MISDEMEANOR)": "TRANS OF MARIJ INTO CA." The critical word— "import"—does not appear anywhere in the judgment or in the plea form, even though there *is* a crime of importation explicitly mentioned in the California statute, and even though that crime was mentioned in the complaint. If anything, then, the fact that the term "import" and "transport" both appeared in the complaint while only the latter appeared in the judgment and plea form suggests that Martinez was *not* convicted of importing into California.[5] And transporting into California, of course, would include transporting from Oregon or Arizona rather than from Mexico, courses of conduct not within the "import" category of the career criminal guideline for reasons already discussed.

We find equally unavailing the contention that the "I transported marijuana across border" statement in the plea form proves that Martinez was convicted of importing marijuana in the sense of "import"

rise to career criminal status under U.S.S.G. § 4B1.1.

4. The only doubt in this regard is that conceivably, "import into this state" in the state statute could refer to importation over state as well as federal borders, although we have found no California law so indicating. *See* Part II.A, *supra.*

5. The government suggests that the omission of "import" can be explained by the fact that there was limited space on the abstract of

judgment form to describe the crime of which Martinez was convicted. While the form does provide limited space, that does not explain why, of the two statutory terms available, the term "transport" was chosen over "import."

Although we cannot tell for sure, the fact that this was a guilty plea suggests a plea bargain, and that in turn suggests a plea for less than all the charges in the complaint. This consideration lends even more support to the conclusion that the plea was to transporting and was not to importing.

used in the federal guideline. Under the categorical approach, we look to what Martinez was convicted of, not the conduct underlying his conviction. So it does not really matter whether Martinez transported marijuana across the Mexican border if that is not what he was convicted of doing, and, as we have already discussed, it was not. Moreover, in the context of the guilty plea as a whole, it is most likely that Martinez was simply admitting the crime he was convicted of, transporting marijuana into California; transporting marijuana into California and transporting marijuana "across border" mean the same thing, and neither necessarily means transporting across an international border.

Accordingly, the text of Section 11360(a) and the judicially noticeable facts do not establish that Martinez was convicted of any offense defined by the career criminal guideline as supporting enhancement. Because Martinez only had one prior felony conviction satisfying the definition of a controlled substances offense contained in § 4B1.2(b), he could not be deemed a career offender under the Guidelines. The district court therefore erred by setting his base offense level in accordance with the schedule for career offenders set forth in § 4B1.1.

## III. Quantity of Marijuana

■ Martinez pled guilty to one count of a violation of 21 U.S.C. §§ 952 and 960. The transcript of the plea hearing reveals that Martinez answered "Yes" to the question: "as a factual basis for your plea, on or about February 11th of this year, did you intentionally bring approximately 60 kilograms of marijuana into the United States?" The government concedes, however, that not less than 10% of that total weight was packaging, which means that for purposes of the Sentencing Guidelines, Martinez's base offense level (without the career offender enhancement) was 20. *See* U.S.S.G. § 2D1.1(c)(10).[6] Martinez re-

served the right to appeal the quantity of marijuana only with respect to the sentencing enhancement related to the career offender finding; he did not contest the quantity finding for purposes of his conviction. Thus, we have no occasion to consider his challenge to the district court's adoption of the 10% figure.

## CONCLUSION

We REVERSE the district court's finding that Martinez was a career offender under the Sentencing Guidelines, and REMAND for resentencing.

TROTT, Circuit Judge, Concurring and Dissenting:

Martinez was convicted in 1996 of a violation of § 11360(a) of the California Health and Safety Code, which reads,

> ... Every person who ... *imports* into this state ... any marijuana shall be punished by imprisonment in state prison for a period of two, three, or four years.

Martinez's abstract of judgment with respect to this conviction, to which we may look under *Casarez–Bravo*, 181 F.3d 1074 (9th Cir.1999) to determine the *categorical* nature of the offense of conviction, identifies categorically the crime of Martinez's conviction as "Trans of Marij Into CA." The definition anywhere and everywhere of "importation" is "transportation into." Martinez himself wrote on his plea form, "I transported marijuana *across border*." (Emphasis added). Thus, I believe the district court was correct to conclude that this conviction was for importing marijuana; and because the operative federal career offender definition of a "controlled substance offense" includes an offense under *state law* that prohibits *importing* of marijuana, I believe that the federal career offender enhancement was appropriate. Thus, and with all respect to my col-

---

**6.** The Guidelines provide for a base offense level of 20 with respect to quantities of mari-

juana between 40 and 60 kilograms. *See* U.S.S.G. § 2D1.1(c)(10).

leagues, I dissent from their conclusion on this issue. In all other respects, I concur.