**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Heriberto SANDOVAL–VENEGAS,
Defendant–Appellant.**

**No. 01–50226.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 15, 2002.

Filed June 14, 2002.

---

Steven Hubachek (argued), and Gary P. Burcham, San Diego, CA, for the defendant-appellant.

Patrick K. O'Toole, United States Attorney, Shane P. Harrigan, Assistant United States Attorney, United States Attorney's Office, San Diego, CA, for the plaintiff-appellee.

Before: SCHROEDER, Chief Judge, CUDAHY,* and McKEOWN, Circuit Judges.

* The Honorable Richard Cudahy, Senior United States Circuit Judge for the United States Court of Appeals for the Seventh Circuit, sitting by designation.

McKEOWN, Circuit Judge.

This appeal stems from Heriberto Sandoval–Venegas' conviction for bank robbery and the district court's imposition of an enhanced sentence based on two prior convictions. Pursuant to a conditional guilty plea, Sandoval challenges the district court's finding that there was probable cause for his arrest and its determination that he was a career offender under United States Sentencing Guidelines Manual ("Guidelines") §§ 4B1.1 & 4B1.2. We affirm the district court's probable cause ruling. We likewise affirm the district court's determination that California Health & Safety Code § 11359, which prohibits the possession of marijuana for sale, is a qualifying statute for purposes of the Guidelines career offender enhancement. Nevertheless, because certain documentation standards must be met as a predicate to enhancement, as we recently clarified in *United States v. Matthews*, 278 F.3d 880 (9th Cir.) (en banc) (as amended), *cert. denied*, —— U.S. ——, 122 S.Ct. 2345, 153 L.Ed.2d 173 (2002), and *United States v. Corona–Sanchez*, 291 F.3d 1201 (9th Cir. 2002) (en banc), we reverse the career offender determination as to Sandoval's burglary conviction and remand for resentencing.

## I. PROBABLE CAUSE

Sandoval appeals the district court's probable cause determination with respect to his warrantless arrest, arguing that subsequent identifications and incriminating statements must be suppressed because the arrest was tainted. Sandoval's challenge rests primarily on the nuances of what is known as the "collective knowledge" doctrine. *United States v. Butler*, 74 F.3d 916, 920 (9th Cir.1996) (citation omitted) (holding that probable cause "can also be demonstrated through the collective knowledge of police officers involved in the investigation"). We review the probable cause determination de novo, with underlying factual findings reviewed for clear error. *Id.*

A brief factual review reveals that Sandoval's arrest was the culmination of the efforts of two detectives who were working together, in close communication and consultation, and who were both present at the arrest. Sandoval robbed a Bank of America branch in San Diego, California, by presenting a demand note. The teller provided him with approximately $625, including bills with pre-recorded serial numbers, and a bundle of bills with a tracking device, known as a "Pro–Net tag," embedded in it, that is automatically activated when it reaches a certain distance from the bank. This device transmits a unique electronic signal on a specified frequency.

Two detectives were key players in Sandoval's eventual apprehension. The first, Detective Griffin, arrived at the bank and broadcast a description of the robber. The second officer, Detective Hershman, who responded a few minutes later, picked up a patrol car with a Pro Net unit capable of receiving the tracking signal and joined the grid search. After following a strong electronic signal, Hershman spotted Sandoval and observed that he matched the general description of the robber. After watching Sandoval in his rear view mirror, Hershman reversed his direction and drove toward him. Sandoval then fled across a church parking lot; the detective pursued him on foot but failed to apprehend him. During the chase, Hershman radioed a description of Sandoval. As he returned to his car, Hershman heard on his radio that officers had detained an Hispanic teenager near the church, so he returned to the church but advised the other officers that the teenager was not the suspect he had been chasing.

Meanwhile, Detective Griffin, who had initially responded to the bank alert and was now also in a Pro Net unit, radioed

that he had located a strong tracking signal near the church. He parked at a strip mall to evaluate the signal and saw a man come out of a liquor store. Recognizing the man as matching the radio description of the robber, and believing that the signal may have been located, Detective Griffin radioed a description of Sandoval and his travel direction to other units and advised them to "keep an eye on him" as Sandoval walked towards the Travel Time Motel. Hershman heard this broadcast and realized that the individual matched the description of the suspect that he had chased on foot. As Hershman headed toward the motel, he heard on his radio that other units had a suspect in custody. Upon seeing the suspect, however, Hershman told the officers, "That's not him."

Detectives Hershman and Griffin converged on the motel and, talking through their car windows, communicated that their signals were pointing toward the motel. The two detectives entered the building and the manager told them that "a Mexican man" had just checked in. They checked the public areas of the motel, and were then informed over the police radio that the signal was lost, which, based on Hershman's training, led him to conclude that the signal had been either detected and destroyed or the tracking device's battery had died. Then, as Detectives Hershman and Griffin discussed options with several other officers in a first floor hallway, Sandoval emerged from Room 104, directly into the group. Both detectives recognized him as the suspect they had previously identified in the church parking lot and outside the liquor store, respectively. Detective Griffin grabbed Sandoval and the other officers handcuffed him.

▪ This case presents a classic application of the principle that "[c]ourts look to the totality of the circumstances known to the officers in determining whether there is probable cause for an arrest."

*Butler,* 74 F.3d at 920 (internal quotation marks omitted). More to the point, we recently reaffirmed that probable cause may be based on the collective knowledge of officers at the scene of an arrest. *Dubner v. City and County of San Francisco,* 266 F.3d 959, 966 (9th Cir.2001).

Unlike *Dubner,* which we called an "unusual case" because we could not "determine what the arresting officers knew at the time," in this case, it is easy to sort out the officers' knowledge. The two detectives had the benefit of mutual radio descriptions of the suspect and, upon converging at the motel, not only traded descriptions, but confirmed that their tracking devices pointed to the motel. Finally, at the scene of the arrest, both detectives recognized Sandoval as the individual who had been indicated by the tracking device. Notably, Hershman had previously eliminated two other suspects who did not match his previous profile. The district court found that this information was reliable, at least in the case of Detective Hershman, who had extensive experience with the Pro–Net device. The court was privy to extensive testimony about the electronic system, how it operated, its track record, and the detectives' experience with it. The reliability finding easily survives a clear error analysis. *See United States v. Levine,* 80 F.3d 129, 132–33 (5th Cir.1996) (upholding determination that probable cause existed based on electronic tracking device and general description).

The detectives were in continuous collective contact and their pooled knowledge was a nice piece of detective work that resulted in Sandoval's apprehension. Sandoval's notion that Griffin should somehow be viewed as an island, or act as if he were operating solo, cannot be squared with the facts. Whether Detective Griffin alone would have had probable cause is immaterial because, as the district judge ex-

plained: "Hershman's right there and he could have said 'That's not the guy' "—as he had, in fact, done twice. Hershman had sufficient knowledge to constitute probable cause; Detective Griffin, standing at his elbow and cooperating in the pursuit, was entitled to use it to arrest Sandoval.[1]

## II. CAREER OFFENDER ENHANCEMENT

We next consider whether, based on his prior convictions, Sandoval qualifies as a career offender under U.S. Sentencing Guidelines §§ 4B1.1 and 4B1.2. Under the relevant portion of § 4B1.1: "A defendant is a career offender if ... the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." Our approach to determining whether the defendant's prior convictions qualify derives from *Taylor v. United States*, 495 U.S. 575, 588–89, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), which examined an analogous inquiry in the context of the Armed Career Criminal Act, 18 U.S.C. § 924(e). *United States v. Casarez–Bravo*, 181 F.3d 1074, 1077 n. 1 (9th Cir.1999). We have applied a similar framework in the context of the Guidelines. *United States v. Martinez*, 232 F.3d 728 (9th Cir.2000).

■ For any given prior conviction, we engage in a two-step process to determine whether enhancement is justified. In what has been termed the "categorical approach," we first "generally look to the statutory definition of the crime, rather than to the defendant's specific conduct." *Casarez–Bravo*, 181 F.3d at 1077 n. 1. If the statute fails to qualify, we move to the second step in which we may also "examine documentation or judicially noticeable facts that clearly establish that the conviction is a predicate conviction for enhancement purposes." 181 F.3d at 1077 (inter-

nal citation and quotation marks omitted). A conviction that does not satisfy the categorical test may only be used to enhance a sentence by meeting this rigorous standard. *See Corona–Sanchez*, 291 F.3d at 1203–04.

■ Recent cases have clarified that under the Guidelines, as under the Armed Career Criminal Act, documentation must establish that the defendant was *convicted* either under a categorically qualifying statute or for conduct sufficient to be a qualifying offense. *See Matthews*, 278 F.3d at 884–85; *Martinez*, 232 F.3d at 734–35. For the first step of the analysis, the court must determine the fact of conviction under a particular statute. Thus, for example, a certified judgment of conviction would be sufficient, as would a clear, uncontested presentence report. *See Corona–Sanchez*, 291 F.3d at 1205–06. For the second step of the analysis, however, the documentation must consist of *judicially noticeable* qualifying facts. It is not sufficient to establish that the circumstances surrounding the offense might have allowed a conviction for a qualifying offense; rather, the documentation must show that the defendant was, in fact, found guilty of each necessary element by a fact finder or through a guilty plea. *See Martinez*, 232 F.3d at 734. In *United States v. Franklin*, 235 F.3d 1165, 1170 & n. 5 (9th Cir.2000), we gave an extensive explanation of the type of documentation required. For example, charging papers combined with a judgment of conviction showing a plea to the elements listed in the charging papers would be sufficient.

Here, the presentence report listed two relevant prior convictions: possession of marijuana for sale under California Health & Safety Code § 11359 and burglary un-

---

1. Because we conclude that probable cause existed, we do not address the government's alternate argument that the detention was only an investigative stop pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

der California Penal Code §§ 459 and 462(a). Sandoval did not contest the fact of these convictions. The question we must consider, therefore, is whether these convictions qualify under the Guidelines' definition.

### A. POSSESSION OF MARIJUANA FOR SALE

Sandoval and his girlfriend were convicted of possession of marijuana for sale. According to the arrest report, they were stopped at the U.S.-Mexico border with approximately seventy pounds of marijuana in the car. The car was registered to his girlfriend, who was the driver. Sandoval told customs agents that he knew they were smuggling something illegal but that he could not identify it. Both defendants pleaded guilty to the possession count pursuant to a plea agreement dismissing other charges. They each received two months in jail plus three years of probation.

Sandoval argues that under the categorical analysis described above, this conviction should not have been used as a predicate offense under the Guidelines. The district court counted this conviction as a "controlled substance offense," which the Guidelines define as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b). The California statute fits this definition.

■ Contrary to Sandoval's assertions, California law contains an adequate scienter requirement to qualify for Guidelines purposes as criminalizing "possession . . . with intent to . . . distribute." U.S.S.G. § 4B1.2(b). California Health & Safety Code § 11359 punishes "[e]very person who possesses for sale any marijuana, ex-

cept as otherwise provided by law." There is no dispute, as the government concedes, that this statute does not require "the specific intent to sell the controlled substance *personally*." *People v. Parra*, 70 Cal.App.4th 222, 82 Cal.Rptr.2d 541, 542 (1999) (interpreting a similar provision). Rather, "the defendant needs to either (1) possess the specific intent to sell the controlled substance personally, or (2) possess the specific intent that someone else will sell the controlled substance." *Id.* at 544.

■ Further, under California law, possession requires knowledge. *See People v. Meza*, 38 Cal.App.4th 1741, 45 Cal. Rptr.2d 844 (1995) ("Unlawful possession of a controlled substance for sale requires proof that the defendant possessed the contraband with the intent of selling it and with knowledge of both its presence and illegal character."). In this regard, California's possession for sale closely mirrors the federal statute that criminalizes possession with intent to distribute. *See* 21 U.S.C. § 841(a); *United States v. Cervantes*, 219 F.3d 882, 893 n. 11 (9th Cir.2000) ("Constructive possession requires that the defendant both knew of the controlled substance's presence and had the power to exercise dominion and control over it."), *cert. denied*, 532 U.S. 912, 121 S.Ct. 1242, 149 L.Ed.2d 150 (2001). California does not, as Sandoval argues, criminalize the mere power to control the narcotic; instead, the offender must knowingly control it with the specific intent to sell it or to have someone else sell it. The requisite scienter is established regardless of whether the possession intends to sell the drugs personally or vicariously. Thus, California Health & Safety Code § 11359 comfortably fits within the Guidelines definition as a qualifying offense.

## B. BURGLARY

Sandoval also was convicted of burglarizing his sister's residence. The charging document and state probation officer's presentence report state that he "unlawfully entered" with "intent" to steal. He entered a guilty plea and was sentenced to two years in state prison.

Sandoval claims that the use of this conviction was error and, at least on this record, we agree. Nothing in the record clearly establishes that the burglary conviction qualified as a "crime of violence" for purposes of § 4B1.1. Under that section:

> [t]he term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a).

We first examine this conviction under the categorical approach. The difficulty we encounter in doing so, however, is that unlike the marijuana conviction, the documentation does not clearly set out a qualifying statute.

▬▬▬ The record contains (1) the charging document; (2) a state probation officer's report; and (3) the uncontested federal presentence report. None of these establishes that Sandoval was *convicted* of first degree residential burglary under a qualifying statute. The charging papers are inadequate unless they are combined with documents that demonstrate the conviction was for the offense as charged. *See Franklin,* 235 F.3d at 1170.[2] The state probation officer's report, which is designated as a "Pre-conviction report," also is unhelpful to the inquiry because it does not reference the fact of the conviction. *See Martinez,* 232 F.3d at 734.

We are thus left with the presentence report, which does not specify a qualifying statute of conviction. *See Corona–Sanchez,* 291 F.3d at 1205–07. In the "Charge/Agency" column, it lists: "462(a) PC, 1st Degree Residential Burglary," and in the "Date Sentence Imposed/Disposition" column, it states "P/ G [pled guilty] to 459 PC, Burglary, 2 yrs. state prison, $200 fine." Neither listed statute could possibly be construed as a qualifying predicate conviction. California Penal Code § 462(a) deals with probation[3] and does not define an offense at all. California Penal Code § 459 is California's general burglary provision. We have previously held that this provision does not define a qualifying predicate offense for purposes of the Guidelines career offender determination. *Williams,* 47 F.3d at 994 ("[T]he terms of the California statute are broader than the conduct defined under [the Guidelines] because the statute encompasses burglaries of buildings other than dwellings in situations that might not present a serious potential risk of physical injury to another.").

---

**2.** The charging papers cite "FIRST DEGREE RESIDENTIAL BURGLARY, in violation of PENAL CODE SECTION 459...."

**3.** This provision reads in full: "Except in unusual cases where the interests of justice would best be served if the person is granted probation, probation shall not be granted to any person who is convicted of a burglary of an inhabited dwelling house or trailer coach as defined in Section 635 of the Vehicle Code, an inhabited floating home as defined in subdivision (d) of Section 18075.55 of the Health and Safety Code, or the inhabited portion of any other building."

Although the report's listing of "1st Degree Residential Burglary" might indicate that there was a conviction under California Penal Code § 460, no actual conviction emerges with any clarity. The information is listed under "Charge," with an indication that Sandoval pled guilty only to § 459; the listing also apparently is intended to correspond to the listed § 462(a).

Thus, although the documents in the record might establish that Sandoval was *charged* with first degree residential burglary, they do not establish that he was *convicted* of it.[4] This is a case where "might" simply cannot be enough. The consequences of a qualifying conviction are significant and neither the district court nor this court should be handed the task of reading between the lines. We thus conclude that the record does not contain sufficient documentation to discern a qualifying statute of conviction, much less judicially noticeable, case-specific facts.

Although Sandoval objected in the district court to the sentencing as a career offender, he limited his objection to the use of the marijuana conviction. Indeed the trial judge specifically stated that she did not understand the defendant to be "challenging the burglary." Consequently, we evaluate Sandoval's claim under plain error analysis. Fed.R.Crim.P. 52(b); *Casarez–Bravo*, 181 F.3d at 1078. Applying a sentencing enhancement that dramatically increases the sentence, as it does here, without a qualifying prior conviction is plain error and warrants remand. *Casarez–Bravo*, 181 F.3d at 1078. We therefore conclude that the sentence must be

vacated and the case remanded for resentencing.

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED** for resentencing consistent with this opinion.

---

4. Because the record is inadequate to support the government's suggestion that Sandoval was actually convicted of first degree residential burglary under California Penal Code § 460, we do not address the question of whether this provision would, as we may have suggested in the past, categorically qualify for the career offender determination. *See United States v. Becker*, 919 F.2d 568, 571–72 (9th Cir.1990); *United States v. Williams*, 47 F.3d 993, 994–95 (9th Cir.1995). Nor is it necessary to resolve whether, as Sandoval argues, unlawful entry must be established for the burglary to qualify as a prior offense.