UNITED STATES of America, Plaintiff–Appellee,

v.

Jose Luis NAVIDAD–MARCOS, Defendant–Appellant.

No. 03–10234.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 13, 2004.

Filed May 5, 2004.

Michael Powell and Fredilyn Sisson, Assistant Federal Public Defenders, Reno, NV, for the appellant.

Brian Sullivan and Ronald C. Rachow, Assistant United States Attorneys, Reno, NV, for the appellee.

Before: WALLACE, KOZINSKI, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge:

Jose Luis Navidad–Marcos appeals the district court's enhancement of his offense level by 16 levels pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(i) on account of his 1994 conviction in violation of California Health and Safety Code § 11379(a). We vacate the sentence and remand for resentencing.

I

.Mexican citizen Navidad–Marcos was arrested by police officers in Reno, Nevada, for trafficking in controlled substances. He was subsequently convicted and sentenced to state prison. The United States Immigration and Naturalization Service ("INS") became aware of his presence while he was in state custody and interviewed him. Navidad–Marcos admitted to the INS that he had previously been deported and reentered the United States illegally. The INS confirmed this admission by investigation and fingerprint analysis.

Navidad–Marcos was indicted and charged with willfully being unlawfully in this country in violation of 8 U.S.C. § 1326(a) after being previously arrested and deported, removed, and/or excluded. He pleaded not guilty, but subsequently pleaded guilty to the one count indictment without a plea agreement.

A Presentence Investigation Report ("PSR") was prepared in anticipation of the sentencing hearing. The PSR calculated the base offense level at 8 pursuant to U.S.S.G. § 2L1.2(a), but provided for a 16–level enhancement according to § 2L1.2(b) for his previous deportation after conviction on a drug trafficking offense. This enhancement was based on Navidad–Marcos' prior California conviction and three-year sentence on August 2, 1994. The PSR also recommended a 3–level reduction for acceptance of responsibility. Applying a criminal history category of III to the total offense level of 21, the PSR recommended a guideline imprisonment range of 46–57 months.

At his initial sentencing hearing Navidad–Marcos objected to the 16–level aggravated felony enhancement and request-

ed a continuance to brief the issue. After the parties fully briefed the matter, sentencing was completed. In his objection, Navidad–Marcos contended that the 1994 Kern County, California, conviction was "overbroad" under the categorical approach set out in *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). Specifically, Navidad–Marcos explained that his 1994 conviction under California Health and Safety Code § 11379(a) could have been for conduct that would not qualify as a "drug trafficking" aggravated felony justifying the 16–level enhancement. Thus, he concluded that only a 4–level enhancement should be applied for a felony conviction pursuant to U.S.S.G. § 2L1.2(b)(1)(D), which would render a 10–16 month guideline range.

Holding California Health and Safety Code § 11379(a) to be overbroad, the district court sought other judicially recognizable information to determine the offense to which Navidad–Marcos had pleaded guilty. The government and probation office indicated that the only California state court documents available were the 1994 California Presentence Report, Information, Abstract of Judgment, and a copy of the case investigative report. Although originally charged with three counts, Navidad–Marcos ultimately pleaded to a single count. In alleging the criminal violation to which Navidad–Marcos pleaded guilty, the state charging document contained the generic statutory language of § 11379(a), stating in relevant part:

> Count: 001, On or about October 8, 1994, Jose Luis Navidad, Jesus Alverto Dinas–Torres, and Victor Manuel Ojeda Mora, did willfully and unlawfully transport, import into the state of California, sell, furnish, administer, or give away, or offer to transport, import into the state of California, sell, furnish, administer, or give away, or attempt to import into the state of California or transport a con-

trolled substance, to wit: methamphetamine, in violation of Health and Safety Code Section 11379(a), a felony.

The government also included a California "Abstract of Judgment—Prison Commitment" form from the Kern County Superior Court which indicates Navidad–Marcos was sentenced to three years for violating § 11379(a). The abstract also states that "defendant was convicted of the commission" of a felony in violation of Count I, § 11379(a). The abstract then identifies the "crime" as "Transport/sell cont. sub."

Analyzing these facts under the first "categorical" part of the *Taylor* analytical model, the district court concluded that § 11379(a) was insufficient to qualify as a predicate offense enabling the 16–level enhancement in § 2L1.2(b)(1)(A). Specifically, the court concluded that the statute "punishes a full range of conduct encompassed by the statute, which might not constitute an aggravated felony." Thus, the court analyzed the judicially noticeable documents under the *Taylor* modified categorical approach. In doing so, it expressly eschewed any reliance on the state presentence report and instead focused on the state Information and abstract of judgment. Noting the language in the Information was generic, the court explained that if the judgment merely convicted Navidad–Marcos of "Count I," the offense would not qualify as a predicate offense enabling the 16 level enhancement.

■ However, the district court distinguished Navidad–Marcos' case from those where the judgment simply mirrors the charging document because the judgment described the crime as "Transport/sell cont. sub." Thus, the court determined that the controlled substance was the methamphetamine charged in the Information and a "certified exemplified copy" of

the abstract of judgment convicted Navidad–Marcos of "the transportation, sale of a controlled substance." The court concluded, based on the judgment abstract alone, that the conviction qualified for the enhancement under the Sentencing Guidelines. As a result, the court denied Navidad–Marcos' objection and applied the 16–level enhancement. The court adopted the PSR's other findings, setting the Guideline range at 46–57 months and sentencing Navidad–Marcos to a term of 46 months and 3 years supervised release to run consecutive to the Nevada sentence, which had already been served. Navidad–Marcos timely appealed the sentence. We review *de novo* a district court's decision that a prior conviction is a qualifying offense for a sentencing enhancement pursuant to U.S.S.G. § 2L1.2. *United States v. Hernandez–Valdovinos,* 352 F.3d 1243, 1246 (9th Cir.2003).

## II

The district court properly concluded that the conviction did not facially qualify for the enhancement under *Taylor's* categorical analysis. U.S.S.G. § 2L1.2 provides a base offense level of 8 for a defendant who unlawfully enters or remains in the United States. Section 2L1.2(b)(1)(A)(i) provides a 16–level enhancement if the defendant was previously deported after a "drug trafficking offense for which the sentence imposed exceeded 13 months." A drug trafficking offense pursuant to this section means:

> an offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 2L1.2 Application Note 1(B)(iv). To determine whether a prior conviction qualifies as a predicate offense for the 16–level enhancement under § 2L1.2(b)(1)(A)(i), federal courts apply the familiar categorical approach established by the Supreme Court in *Taylor.* See *Hernandez–Valdovinos,* 352 F.3d at 1246; *United States v. Pimentel–Flores,* 339 F.3d 959, 967–68 (9th Cir.2003) (holding the categorical approach applies to § 2L1.2 after the 2001 amendments).

■■■ Pursuant to *Taylor's* analytical model, courts cannot examine the underlying facts of the prior offense, but " 'look only to the fact of conviction and the statutory definition of the prior offense.' " *United States v. Corona–Sanchez,* 291 F.3d 1201, 1203 (9th Cir.2002) (en banc) (quoting *Taylor,* 495 U.S. at 602, 110 S.Ct. 2143). Thus, under the "categorical approach" the court must first look to the statute of conviction to determine if the offense would qualify as a "drug trafficking" offense for § 2L1.2 purposes.

■■■ Here, the district court correctly concluded that Navidad–Marcos' 1994 conviction under California Health & Safety Code § 11379(a) does not qualify for the 16–level enhancement under *Taylor's* categorical statutory approach. The government does not dispute this. As the government necessarily acknowledges, § 11379(a) criminalizes a variety of conduct, some of which would not constitute an aggravated felony under the definitions provided by the Sentencing Guidelines. Indeed, § 11379(a) is violated by "every person who transports, imports into this state, sells, furnishes, administers, or gives away, or offers to transport, import into this state, sell, furnish, administer, or give away, or attempts to import into this state or transport any controlled substance . . . ." Clearly this language includes more than the "manufacture, import, export, dis-

tribution, or dispensing of a controlled substance," or possession with intent to do the same, as required by a "drug trafficking" offense under § 2L1.2(b)(1)(A).

Furthermore, this conclusion is compelled by *United States v. Rivera–Sanchez*, 247 F.3d 905 (9th Cir.2001) (en banc). In *Rivera–Sanchez*, we held that California Health & Safety Code § 11360(a), which mirrors § 11379(a) except for substituting "marijuana" for "controlled substance," did not facially qualify as an aggravated felony under § 2L1.2(b)(1)(A). *Id.* at 909. As we explained in *Rivera–Sanchez*, the statute in question criminalized a very broad category of acts, some of which could not form the basis for an enhancement under § 2L1.2(b)(1)(A). These included: transportation of marijuana for personal use; offers to transport, sell, furnish, administer, or give away marijuana; and solicitation of the prohibited acts. *Id.* at 908–09.

Thus, the district court correctly concluded that § 11379(a) was too broad to establish a predicate offense justifying the 16–level enhancement.

## III

■■ In a "narrow range of cases" in which the statute criminalizes conduct that would not constitute a drug trafficking offense, *Taylor* endorsed a modified categorical approach under which the court can examine " 'documentation or judicially noticeable facts that clearly establish that the conviction is a predicate conviction for enhancement purposes.' " *Corona–Sanchez*, 291 F.3d at 1203 (quoting *Rivera–Sanchez*, 247 F.3d at 908). As we have noted repeatedly, the government has the burden to establish clearly and unequivocally the conviction was based on all of the elements of a qualifying predicate offense. *See, e.g., United States v. Velasco–Medina*, 305 F.3d 839, 851 (9th Cir.2002); *Pimentel–Flores,*

339 F.3d at 968; *Corona–Sanchez,* 291 F.3d at 1211.

■ If judicially noticeable facts would allow the defendant to be "convicted of an offense other than that defined as a qualifying offense," the offense cannot be used to enhance a defendant's sentence. *Corona–Sanchez,* 291 F.3d at 1203–04 (quoting *United States v. Casarez–Bravo,* 181 F.3d 1074, 1077 (9th Cir. 1999)). Indeed, we have explained that the documents used to satisfy a modified-categorical analysis must meet a "rigorous standard." *United States v. Sandoval–Venegas,* 292 F.3d 1101, 1106 (9th Cir. 2002). Because the consequences of a sentence enhancement for a qualifying conviction are significant, we have noted that " 'might' simply cannot be enough," and "neither the district court nor this court should be handed the task of reading between the lines." *Id.* at 1109. In short, the purpose of this modified categorical approach is "to determine if the record unequivocally establishes that the defendant was convicted of the generically defined crime, even if the statute defining the crime is overly inclusive." *Corona–Sanchez,* 291 F.3d at 1211.

■ Here, the district court relied solely on the abstract of the California judgment as proof that Navidad–Marcos had entered a guilty plea in state court to the specific charge of sale and transportation of methamphetamine. However, the abstract of judgment in this case is not sufficient to establish unequivocally that Navidad–Marcos was convicted of the sale and transportation of methamphetamine. The abstract of judgment merely recites the statute of conviction and describes it as "Transport/sell cont. sub."

■ Under California law, as the Supreme Court of California has recently reminded us: "An abstract of judgment is

not the judgment of conviction; it does not control if different from the trial court's oral judgment and may not add to or modify the judgment it purports to digest or summarize." *People v. Mitchell,* 26 Cal.4th 181, 109 Cal.Rptr.2d 303, 26 P.3d 1040, 1042 (Cal.2001). Preparation of the abstract of criminal judgment in California is a clerical, not a judicial function. *People v. Rodriguez,* 152 Cal.App.3d 289, 299, 199 Cal.Rptr. 433 (Cal.Ct.App.1984). Indeed, in California, "[a]ppellate courts routinely grant requests on appeal of the Attorney General to correct errors in the abstract of judgment." *People v. Hong,* 64 Cal. App.4th 1071, 1075, 76 Cal.Rptr.2d 23 (Cal. Ct.App.1998). Under California law, the form of the abstract of judgment is promulgated by the Judicial Council of California. *People v. Sanchez,* 64 Cal.App.4th 1329, 1331, 76 Cal.Rptr.2d 34 (Cal.Ct.App. 1998); Cal.Penal Code § 1213.5. The form simply calls for the identification of the statute of conviction and the crime, and provides a very small space in which to type the description. It does not contain information as to the criminal acts to which the defendant unequivocally admitted in a plea colloquy before the court.

The government would have us infer from the simple summary of the statutory title in the abstract of judgment that Navidad–Marcos had indeed pleaded guilty specifically to the transportation and sale of a controlled substance as opposed to a generic plea to Count One of the Information. However, this document does not,

and cannot, bear that evidentiary weight. It is as equally plausible, if not more probable, that the abbreviation in the form merely summarized the title of the statute of conviction rather than—as the government would have us presume—a conscious judicial narrowing of the charging document. Given that, as a matter of law, the abstract of judgment is not the judgment of conviction, and that it "may not add to or modify the judgment it purports to digest or summarize," *Mitchell,* 109 Cal. Rptr.2d 303, 26 P.3d at 1042, it is not sufficient to establish "unequivocally" that Navidad–Marcos entered a guilty plea to a different charge from the one contained in the Information. Therefore, this abstract of judgment fails to satisfy the "rigorous standard" required by *Taylor's* modified categorical approach, and we must vacate the sentence and remand for re-sentencing. The government will have the opportunity at re-sentencing to offer additional judicially-noticeable evidence to support the enhancement. *Corona–Sanchez,* 291 F.3d at 1213; *United States v. Matthews,* 278 F.3d 880, 885–86 (9th Cir.2002) (en banc).

**VACATED AND REMANDED.**