THOMAS, Circuit Judge,
concurring:
I agree with Judge Berzon that docket sheets, as a general category, are not inherently reliable and do not qualify as documents that satisfy the rigorous standard necessary to be used as conclusive proof of a prior conviction. Shepard v. United States, 544 U.S. 13, 21, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005); United States v. Navidad-Marcos, 367 F.3d 903, 908 (9th Cir.2004).
However, I am persuaded, under the unique circumstances of this case, that the tendered evidence was sufficient to prove that the defendant’s Maryland conviction for child abuse was a predicate offense under 18 U.S.C. § 2252A(b). Therefore, I concur in Judge Callahan’s majority opinion.
The majority opinion does not reach the question as to whether the registration documents qualify as judicially noticeable documents sufficient to satisfy the requirements of Shepard and its progeny. If I were to reach that question, I would agree with Judge Berzon that they do not. Therefore, I join the observations contained in Section III of Judge Berzon’s dissent, although it does not affect my joinder of the majority opinion.
*975 BERZON, Circuit Judge, with whom Judges SCHROEDER and REINHARDT join, and with whom Judge THOMAS joins as to Part III, dissenting:
Dennis Strickland was convicted of receipt and possession of child pornography. He was sentenced pursuant to 18 U.S.C. § 2252A, which permits a sentencing enhancement if the defendant has a prior state conviction “relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor.” Id. Strickland’s prior conviction was for child abuse, an offense that, under Maryland law, encompasses both physical and sexual abuse of a child. It is not categorically a predicate offense under § 2252A.
The majority now holds that a Maryland state court document is adequate to prove that Strickland was convicted of a sexual offense. The majority concludes, essentially, that what it refers to as the “docket sheet” in Strickland’s Maryland conviction is “close enough” to the minute order we approved in United States v. Snellenberger, 548 F.3d 699, 701-2(9th Cir.2008), to form the basis for judicial enhancement of his criminal sentence. This conclusion is wrong for three reasons: First, docket sheets, as a general category, are not inherently reliable. Second, the Maryland statutes and court rules cited by the majority do not demonstrate that docket sheets created in Maryland state courts meet the Snellenberger criteria. Third, the specific document the majority describes as a docket sheet and views as conclusively proving that Strickland committed a sexual offense is actually a document of some other kind, was not created at the time of his guilty plea, and does not contain a description of the offense of conviction that unambiguously meets the federal criteria. Because the document relied upon by the majority does not satisfy the “demand for certainty when identifying a generic offense” required by Shepard v. United States, 544 U.S. 13, 21, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), I dissent.
I.
As the Supreme Court explained in Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), “[ojther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.” This rule is founded on “constitutional protections of surpassing importance,” namely the Sixth Amendment right to trial by an impartial jury. Id. at 476, 120 S.Ct. 2348.
Because the constitutional rights at stake are so central in criminal cases, “documents used to satisfy a modified-categorical analysis must meet a rigorous standard.” United States v. Navidad-Marcos, 367 F.3d 903, 908 (9th Cir.2004) (internal quotation omitted). The record must “unequivocally establish!]” that the defendant was convicted of the generically defined crime. Id. The sentencing court may determine whether a guilty plea necessarily required the defendant to admit the elements of the generic offense by reference to “the charging document ... a plea agreement or transcript of colloquy between judge and defendant ... or [ ] some comparable judicial record.” Shepard, 544 U.S. at 26,125 S.Ct. 1254.
Docket sheets are, as a general proposition, simply not as reliable as the documents approved in Shepard. Nor are they as reliable as the minute order we approved in Snellenberger. Minute orders are prepared at the time of the judicial action in question by a clerk who is present and observing the proceedings. Docket sheet entries are often made after the fact based on review of pertinent judicial documents. The process of transposing information onto docket sheets can result *976 in error far more frequently than contemporaneous recording of judicial events by a direct observer.
Indeed, errors on docket sheets are so common that courts often assume discrepancies between conflicting documents have resulted from a clerical error on a docket sheet entry. As we have recognized, elementary oversights in data entry can result in unconstitutional deprivations of liberty. See Oviatt v. Pearce, 954 F.2d 1470, 1476 n. 4 (9th Cir.1992) (holding that a county jail system could be held liable under 42 U.S.C. § 1983 for failing to “have some check on the ability of a single clerical error to result in prolonged incarceration without arraignment, a bail hearing, or a trial” after the plaintiff was held for 114 days without trial).
The case law is replete with references to docket sheet errors involving dates on which judgments or motions were filed. See Voravongsa v. Wall, 349 F.3d 1, 2 n. 2 (1st Cir.2003); Missouri v. Ring, 86 S.W.3d 481, 481 n. 3; Curiel v. Fleker, 558 F.Supp.2d 1047, 1052 (C.D.Cal.2008); Sec. Exch. Comm’n v. Breed, No. 01 Civ. 7798(CSH), 2004 WL 1824358, at *8 n. 2 (S.D.N.Y. Aug 13, 2004) (“Confusingly, there appear!] to be two errors in the Clerk of the Court’s docket sheet.... Perhaps the lesson to be learned is that attorneys should not merely trust the docket sheet to provide necessary deadlines.”); Browning v. Walters, 620 N.E.2d 28, 30 (Ind.Ct.App.1993); Guardianship of Hurley, 394 Mass. 554, 476 N.E.2d 941, 943-44 & n. 4 (1985) (observing that the docket sheet reflected that the plaintiff filed a motion to amend his petition over five months after he actually filed it); Pemiscot County Mem’l Hosp. v. Bell, 770 S.W.2d 499, 501(Mo.Ct.App.1989) (noting that the docket sheet recorded the notice of appeal as being filed eighteen days after it was actually received).
Docket sheets also often contain substantive errors. Stafford v. Ward, 60 F.3d 668, 669 n. 3 (10th Cir.1995) (assuming that a missing notation was more likely an error on the docket sheet than an indication that a record was not transmitted to state court judges); United States v. Ewing, 445 F.2d 945, 947 n. 3 (10th Cir.1971) (noting that the docket sheet erroneously indicated that the jury had returned a verdict of not guilty, leading to the impression that the appellant had been retried on a count of which he’d been acquitted); Panko v. Eighth Judicial Dist. Court, 111 Nev. 1522, 908 P.2d 706, 707 n. 2 (1995) (observing that the docket sheet failed to list a real party in interest); Ferrell v. Wall, 971 A.2d 615, 622 (R.I.2009) (“The docket sheet ... indicates that ... the motion to reduce applicant’s sentence ... had been withdrawn.... The docket sheet entry must be in error.”).
Docket errors may also result in records that reflect a conviction for a crime other than that to which the defendant pled guilty. In Homan v. Hughes, 708 S.W.2d 449(Tex.Ct.App.1986), the court denied relief to a petitioner who challenged the trial court’s nunc pro tunc adjustment of his conviction after a significant error was discovered. The clerk’s affidavit read:
The defendant ... pled guilty to the offense of aggravated robbery.... The defendant signed his plea papers ... reflecting his plea was to aggravated robbery. For some reason, when I prepared the judgment and sentence in this case, I incorrectly showed the defendant pled to a reduced charge of robbery.... Subsequently, I discovered the mistake.
Id. at 454 n. 4.
In light of the error-prone nature of docket sheets, a district court could not with certainty rely on one without inspecting the state statutes and regulations that govern the creation and maintenance of *977 docket sheets to ensure their accuracy. That is not what Shepard approved. In any event, the Maryland rules and statutes on which the majority relies do not establish that guilty pleas are entered into the docket sheet “at the time the guilty plea is taken [] or shortly afterward.” Snellenberger, 548 F.3d at 702. Nor do Maryland Rule 16-305 or the Maryland Code provision cited by the majority contain any reference to the clerk’s duty to enter promptly sentences, convictions, or judgments generally. Maryland Rule 8 — 202(f), similarly, merely states that “entry” of judgment occurs, for the purposes of starting the thirty-day period during which notice of appeal may be filed, “on the day when the clerk of the lower court first makes a record in writing of the judgment, notice, or order on the file jacket, on a docket within the file, or in a docket book.” Md. R. 8 — 202(a), (f). Nothing in this multifarious provision assures that the entry of judgment is even made on a docket sheet, much less that the docket sheet is accurate. Moreover, our approval of the minute order in Snellenberger hinged on the fact that such orders are created “when judgment upon a conviction is rendered.” 548 F.3d at 701 (quoting Cal.Penal Code § 1207) (brackets omitted). There is nothing in the Maryland code or court rules preventing the clerk of the court from recording the conviction weeks, months, or years after the judgment is rendered.
If there are any states in which the clerk of court’s legal duties guarantee the accuracy and timely entry of their docket sheets, Maryland is not among them.
II.
In fact, the particular Maryland document at issue here proves the fallibility of docket sheets and similar documents. The information which, according to the majority, proves that Strickland was convicted of
a sexual offense was assuredly not entered at the time of his conviction. The document (which I refer to as “the Document” for lack of any indication of what it actually is) has no heading and seems to have been generated as a result of a probation revocation proceeding.[1] The Document shows, under the heading “Charge and Disposition Information,” that Strickland’s conviction for child abuse was entered on November 6, 2002. A segment of the Document titled “Document Tracking” contains, among other materials reporting the content of related documents, “docket information” as of November 4, 2005, and is headed “Docket.” This section includes, after the date November 6, 2002, the statements “Registration required under Criminal Procedure Sec. 11-704. Defendant to register DNA. Defendant is a child sex offender.” The Document also bears the notation “[c]ase data converted on 11/04/2005.” This note suggests that the November 4, 2005 entry includes information ostensibly reproduced from the docket sheet in Strickland’s 2002 conviction, but it does not with the required “certainty,” Shepard, 544 U.S. at 21, 125 S.Ct. 1254, establish that the “case data” was “converted” from a document created at the time of the waiver of jury trial, conviction, or sentencing, or that it was reproduced accurately.
Moreover, none of several entries for November 2002 that appear under “Docket” on the 2005 Document states unequivocally that the conviction was for sexual abuse. One entry does state that “Registration is required” under the sex offender statute and that “Defendant is a child sex offender.” Neither comment directly ties the registration requirement or the status to the crime of conviction.
In short, it appears the only information indicating that the child abuse conviction *978 was for a sexual offense was entered on the Document three years after the guilty plea, conviction and sentencing. It would be plausible to infer that the 2005 “Docket” entry describing events of November 6, 2002 was created by cutting and pasting a docket sheet entry that was created earlier. “Inferences, however, are insufficient under the modified categorical approach.” Cisneros-Perez v. Gonzales, 465 F.3d 386, 393 (9th Cir.2006). The Document also indicates that Strickland was at some point convicted of a sexual offense. But the sentencing judge necessarily had to draw an inference from the confusing and ambiguous Document to find as a “fact” that the particular conviction in question was for child sexual abuse. By doing so, the district court compromised Strickland’s constitutional rights, as protected under Apprendi, to a trial by jury of uncertain facts essential to the sentence.
It is worth noting, in this connection, that Almendarez-Torres v. United States, 523 U.S. 224, 243-47, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), created a narrow exception whereby the fact of a prior conviction need not be alleged in an indictment or proven to a jury beyond a reasonable doubt. Subsequent cases illustrate that Almendarez-Torres stands on shaky constitutional ground, giving rise to an obligation strictly to police, rather than to expand, the parameters of that exception lest it topple as entirely without basis. See Shepard, 544 U.S. at 25,125 S.Ct. 1254 (cautioning that Almendarez-Toms does not permit a sentencing judge to resolve any fact that “can be described as a fact about a prior conviction”); Apprendi, 530 U.S. at 487, 489, 120 S.Ct. 2348 (characterizing Almendarez-Toms as “arguabl[y] ... incorrectly decided” and “at best an exceptional departure from” the Court’s sentencing jurisprudence); United States v. Booker, 543 U.S. 220, 244, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) (reaffirming Apprendi ); Butler v. Curry, 528 F.3d 624, 643-45 (9th Cir.2008) (emphasizing that the “exception applies only to facts directly reflected in the documents of conviction, not to secondary facts that are derived or inferred from ... the conviction documents” or to “documents that were not developed as a result of[a process with Sixth Amendment safeguards]”) (internal quotation omitted). We have accordingly held that Apprendi precludes us from broadening Almendarez-Torres to encompass past juvenile convictions, United States v. Tighe, 266 F.3d 1187, 1194-95 (9th Cir.2001); removal proceedings, United States v. Covian-Sandoval, 462 F.3d 1090, 1097-98 (9th Cir.2006); or a defendant’s probation status, Butler, 528 F.3d at 645.
The same principles dictate that a sentencing court may not “read[ ] between the lines” to establish a predicate conviction. United States v. Sandoval-Venegas, 292 F.3d 1101, 1109(9th Cir.2002). Supreme Court precedent “demand[s] certainty” as to the factual basis for the earlier conviction, Shepard, 544 U.S. at 21, 125 S.Ct. 1254, as it must if the Almendarez-Torres prior convictions exception to the Apprendi requirements is to survive. The Document here does not provide the requisite unequivocal proof.
I note that the inadequacy of the Document supplied by the prosecution was the result of lack of diligence, not unavailability of unequivocal proof. The 2002 conviction was, according to the Document, based on an “agreed statement of facts.” That statement, assuming it showed that Strickland had committed child sexual abuse, would presumably have sufficed under Shepard.
III.
The sentencing court in this case relied not only on the Document but also on two sexual offender registration forms. See *979 United States v. Strickland, 556 F.3d 1069, 1071(9th Cir.2009). These non-judicial forms clearly fall outside the scope of the judicial documents approved in Shepard and Snellenberger.
Shepard limits the use of documentary evidence to “conclusive records made or used in adjudicating guilt,” Shepard, 544 U.S. at 21, 125 S.Ct. 1254. Shepard went on to explain that the requirement that “evidence of generic conviction be confined to the records of the convicting court approaching the certainty of the record of conviction in a generic crime State ... was the heart of the decision” in Taylor v. United States, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), the progenitor of the modified categorical approach to prior convictions. Shepard, 544 U.S at 23, 125 S.Ct. 1254.
A sex offender registration form is not a “record[] of the convicting court.” It is filled out by a lay person, not by an official familiar with court proceedings; often, as here, it post-dates the conviction by a number of years; and it may be filled out in connection with a non-judicial matter in a distant jurisdiction. A sentencing court simply may not rely on non-judicial documents signed by a defendant for a nonjudicial purpose years later.
Even if Strickland’s signatures on the registration forms were viewed as admissions that he was convicted of a sexual offense, admissions that are not part of the record of conviction or the sentencing record cannot establish the crime of conviction. Cisneros-Perez, 465 F.3d at 393. Post-conviction admissions in sex offender registration forms, made outside the judicial process and likely made without the assistance of counsel, do not dictate the legal definition of the offense.
Moreover, the registration forms in the record in this case are not fairly read as admissions by Strickland himself. One form is headed “Montana Department of Justice Sexual and Violent Offender Registration Form,” followed by the admonition “Form must be completed by the agency.” It is that form, apparently filled out by a state agency and not by Strickland, that checks “sexual” with regard to “offense type.” It then goes on to record the Maryland offense as “2nd Degree Assault,” not as a generic sexual offense. Although the form also identifies the “victim” as a 16-year-old step-son, that information goes to the underlying facts of the case, rather than the nature of the conviction, and so is not informative on the relevant question: what was Strickland convicted of. On an attached page, Strickland initialed various advisements and then signed. But the initialed advisements pertain to both sexual and violent offenses. So Strickland himself did not admit whether his offense was one or the other.
Strickland also signed a form from the City of Great Falls entitled “Change of Address for Sex Offender — None.” That strangely titled form, on the page signed by Strickland, does not identify the particular offense triggering the signature. There is, as Chief Judge Kozinski notes, an attached data printout from the Montana Department of Justice. That printout says that the conviction was under a “non-Montana statute” specified as “Maryland Sexual Child Abuse.” No statutory number or source of information is stated— and, of course, there was no “Maryland Sexual Child Abuse” statute at the relevant time, only a more general child abuse statute. So the printout is both inaccurate and not attested to by Strickland. We are left with the odd title of the Change of Address form, with nothing at all in Strickland’s own words, as indicating what Strickland in fact signed.
Finally, the third form Strickland signed was a “Sex and Kidnapping Offender Registration Notification” from King County, Washington. The form contains three- *980 and-a-half dense pages of instruction and covers offenses, including kidnapping, that are not sexual offenses. All Strickland signed was the statement that he “ha[s] read or had read to me and received a copy of the Registration Notification, thereby informing me of the registration requirements.” Nothing in that form indicates that Strickland was admitting to child sexual abuse.
The upshot is that even if these long-after-the fact forms could be relevant to the question of what Strickland was convicted of — which, under Shepard they cannot — they are ambiguous and partially inaccurate, do not include direct admissions by Strickland, and require judicial inference and reading between the lines before they can be interpreted as Chief Judge Kozinski would interpret them. Again, “[ijnferences, however, are insufficient under the modified categorical approach.” Cisneros-Perez v. Gonzales, 465 F.3d 386, 393 (9th Cir.2006).
That the judge felt compelled to consider the registration forms to buttress the information in the docket sheet indicates that he doubted the reliability of the docket sheet. Yet, those forms cannot serve as a basis in whole or in part for the sentencing enhancement, as they lack the requisites acceptable to meet the exceedingly narrow exception to Apprendi for unequivocally established prior convictions.
Conclusion
If Strickland was actually convicted of child sexual abuse, the government could have introduced the charging documents, agreed statement of facts, or other conviction records approved under Shepard to show that fact. The government instead offered several unreliable documents that do not, alone or in tandem, unequivocally establish the fact that Strickland was convicted of a sexual offense. The majority opinion, by permitting trial courts to “go[ ] beyond conclusive records made or used in adjudicating guilt,” Shepard, 544 U.S. at 21, 125 S.Ct. 1254, erodes the constitutional protections at the heart of our system of criminal adjudication.
*981 [[Image here]]
[[Image here]]
*982 [[Image here]]
*983 [[Image here]]
*984 [[Image here]]
*985 [[Image here]]
*986 [[Image here]]

. A copy of the Document is attached to this dissent.