**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CHUEN PIU KWONG, aka Phillip
Kwong,

*Petitioner,*

v.

ERIC H. HOLDER JR., Attorney
General,

*Respondent.*

No. 04-72167

Agency No.
A42-024-428

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued February 15, 2008
Submitted October 20, 2011
San Francisco, California

Filed December 7, 2011

Before: William C. Canby, Jr., Carlos T. Bea* and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Canby

---

*Judge Carlos T. Bea was drawn to replace Judge Stephen G. Larson, who resigned during the pendency of this appeal.

20779

## COUNSEL

Ilyce Shugall, Marc Van Der Hout, Van Der Hout, Brigagliano & Nightingale, LLP, San Francisco, California, for the petitioner.

Liza S. Murcia, U.S. Department of Justice, Office of Immigration Litigation, Civil Division, Washington, DC, for the respondent.

**OPINION**

CANBY, Circuit Judge:

Petitioner Chen Piu Kwong, a lawful permanent resident of the United States, was ordered removed on the ground that he had been convicted of an aggravated felony. *See* 8 U.S.C. § 1227(a)(2)(A)(iii). He contends that the evidence was insufficient to establish that the crime of which he was convicted was an aggravated felony. We conclude that Kwong's conviction of first-degree burglary was a conviction of an aggravated felony, and was sufficiently established by the state court's abstract of judgment. We also reject Kwong's claim of ineffective assistance of counsel, and we accordingly deny his petition for review.

## I.   Background

Kwong is a native and citizen of the People's Republic of China. He entered the United States as a lawful permanent resident in 1990. In April 1997, Kwong pleaded guilty to a violation of California Penal Code § 459, the California burglary statute, and was sentenced to two years in prison. As a consequence of his conviction, removal proceedings were initiated.

The evidence of Kwong's conviction that was before the IJ was a certified copy of the abstract of the judgment of the state court.[1] That abstract noted that Kwong had pleaded

---

[1]The abstract of judgment was the evidence that the IJ relied upon at the time of ruling that Kwong was removable. Months later, in applying for withholding of removal, Kwong introduced a transcript of his plea hearing, which the government urges us to take into account. Kwong contends that such use of the transcript is prohibited by 8 C.F.R. § 1240.11(e), which provides that an application for relief from removal "shall not be held to constitute a concession of alienage or deportability." We need not address this issue because we rely solely on the abstract of judgment, which was the only document explicitly relied upon by the IJ in finding Kwong removable. The Board of Immigration Appeals affirmed the IJ's decision "for the reasons stated therein."

guilty to a violation of § 459 of the Penal Code and described the crime as "Burglary — First Deg." Section 460 of the Code defines first-degree and second-degree burglary; first-degree burglary is "burglary of an inhabited dwelling house, vessel . . . which is inhabited and designed for habitation, floating home . . . , or trailer coach . . . , or the inhabited portion of any other building." Cal. Penal Code § 460(a). The abstract of judgment also indicated that Kwong had been sentenced to two years of imprisonment.

The IJ held that Kwong's conviction for first-degree burglary qualified as an aggravated felony because it was a crime of violence. *See* 8 U.S.C. § 1101(a)(43)(F). The IJ later denied Kwong's petition for withholding of removal. The Board of Immigration Appeals ("BIA") adopted and affirmed the IJ's rulings with regard to the order of removal and denial of withholding. The BIA also denied Kwong's motion to remand on the ground of ineffective assistance of counsel.[2]

## II.   Aggravated Felony

The IJ and BIA found that Kwong is subject to a removal order as an alien "convicted of an aggravated felony." 8 U.S.C. § 1227(a)(2)(A)(iii). In 1996, the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) stripped the federal courts of jurisdiction "to review any final order of removal against an alien who is removable by reason of having committed" an aggravated felony. 8 U.S.C. § 1252(a)(2)(C) (as amended). The REAL ID Act of 2005, however, restored jurisdiction over all "constitutional claims or questions of law raised upon a petition for review." 8

---

[2]We withdrew submission of Kwong's petition for review pending the outcome of *United States v. Snellenberger*, 548 F.3d 699 (9th Cir. 2008) (en banc). We subsequently further delayed decision pending the outcome of en banc proceedings in *United States v. Aguila-Montes de Oca*, 655 F.3d 915 (9th Cir. 2011) (en banc). We address both *Snellenberger* and *Aguila-Montes* later in this opinion.

U.S.C. § 1252(a)(2)(D) (as amended). "Whether an offense is an aggravated felony for [removal] purposes is a question of law." *Morales-Alegria v. Gonzales*, 449 F.3d 1051, 1053 (9th Cir. 2006). Thus, we have jurisdiction to address that question.

Where, as here, the BIA adopts and affirms the IJ's order pursuant to *Matter of Burbano*, 20 I. & N. Dec. 872, 874 (BIA 1994), and expresses no disagreement with the IJ's decision, we review the IJ's order as if it were the BIA's. *See Abebe v. Gonzales*, 432 F.3d 1037, 1040-41 (9th Cir. 2005) (en banc). We review de novo the IJ's and BIA's conclusions on questions of law, including whether Kwong's offense qualifies as an "aggravated felony." *See Daas v. Holder*, 620 F.3d 1050, 1053 n.2 (9th Cir. 2010).

## A.   Exhaustion

As a threshold matter, the government argues that Kwong failed to exhaust his administrative remedies with respect to two issues: (1) whether he was convicted of second-degree rather than first-degree burglary, and (2) whether the IJ erred in relying only on the abstract of judgment and the length of his sentence to determine that Kwong had been convicted of first-degree burglary. We conclude that Kwong exhausted these issues before the IJ and the BIA.

"When the BIA has ignored a procedural defect and elected to consider an issue on its substantive merits, we cannot then decline to consider the issue based upon this procedural defect." *Abebe*, 432 F.3d at 1041. Thus, "[t]he BIA's express adoption of [an] IJ's decision which explicitly discussed [a] ground is 'enough to convince us that the relevant policy concerns underlying the exhaustion requirement . . . have been satisfied." *Id.* (quoting *Sagermark v. INS*, 767 F.2d 645, 648 (9th Cir. 1985)).

After initially admitting the factual allegations in the Notice to Appear and not objecting to the introduction of the abstract

of judgment into evidence, Kwong filed a motion to reopen the pleadings and terminate the removal order, followed by a renewed motion to the same effect. In these motions, Kwong stated that his original concession of removability was based on the fact that, "*at that time*," his conviction was sufficient to qualify as an aggravated felony under 8 U.S.C. § 1101(a)(43)(G) . He sought to reopen because this court had subsequently decided *Ye v. INS*, 214 F.3d 1128, 1133 (9th Cir. 2000), which held that a conviction for vehicle burglary under California Penal Code § 459 was not an "aggravated felony" under INA Section 101(a)(43)(G). The IJ evidently interpreted Kwong's motion as submitting, among other positions, that Kwong had not been convicted of first-degree burglary. The IJ addressed and decided that issue on the merits. Because the BIA adopted the IJ's reasoning and affirmed for "for the reasons stated therein," the IJ's discussion of the issue is sufficient, in and of itself, to overcome the exhaustion challenge. *See Abebe*, 432 F.3d at 1041.

We also reject the government's argument that Kwong failed to challenge the IJ's exclusive reliance on the abstract of judgment. While Kwong is required to raise every issue in the administrative proceedings, this court retains jurisdiction where "the issue in question [has] been argued in a slightly different manner [below]." *Cruz-Navarro v. INS*, 232 F.3d 1024, 1030 n.8 (9th Cir. 2000). That is the case here, for Kwong generally challenged the sufficiency of the evidence supporting the IJ's finding as to the conviction.[3]

---

[3]Moreover, in his brief to the BIA, Kwong argued that the abstract of judgment (which had a notation of "Burglary — First Deg.") cited only California Penal Code § 459, and failed to show what kind of structure he was convicted of burglarizing. This contention sufficiently raised the possibility that Kwong's crime did not qualify as first-degree burglary, which is limited to burglary of specified types of structures. *See* Cal. Penal Code § 460(a).

### B. First-Degree Burglary under California Penal Code § 459 as a Crime of Violence

**[1]** Under 8 U.S.C. § 1101(a)(43)(F), the term "aggravated felony" includes "a crime of violence (as defined in section 16 of Title 18 . . .)." Section 16 of Title 18, in turn, provides in its residual clause that "crime of violence" means:

> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

The question for decision, then, is whether Kwong's offense "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of [its commission]." 18 U.S.C. § 16(b).

**[2]** We answered that question in the affirmative some time ago in *United States v. Becker*, 919 F.2d 568, 573 (9th Cir. 1990), where we held that "first-degree burglary under California law is a 'crime of violence' " as defined by 18 U.S.C. § 16(b). *See also United States v. Park*, 649 F.3d 1175, 1178-79 (9th Cir. 2011). We pointed out in *Becker* that "[a]ny time a burglar enters a dwelling with felonious or larcenous intent there is a risk that in the course of committing the crime he will encounter one of its lawful occupants, and use physical force against that occupant either to accomplish his illegal purpose or to escape apprehension." 919 F.2d at 571 (footnote omitted).

In his briefing here, Kwong argues that, rather than *Becker*, our subsequent en banc decision in *United States v. Aguila-Montes de Oca*, 655 F.3d 915 (9th Cir. 2011) (en banc), controls and supports his argument that first-degree burglary under California Penal Code § 459 does not qualify as a crime of violence. He contends that the definition of first-degree burglary in § 460 is broader than the generic definition of bur-

glary, and cannot qualify as a crime of violence under either a categorical or modified categorical approach in his case.

**[3]** These arguments are foreclosed, however, by our recent decision in *Lopez-Cardona v. Holder*, 2011 WL 5607634 (9th Cir. Nov. 18, 2011). *Lopez-Cardona* flatly held that, under *Becker*, first-degree burglary in violation of California Penal Code § 459 was a crime of violence within the meaning of 18 U.S.C. § 16(b). *Id.* at *1. It also held that *Aguila-Montes* had no effect on that conclusion because *Aguila-Montes* was based on a different definition of "crime of violence"; *Aguila-Montes* held only that a conviction under California Penal Code § 459 did not constitute a conviction for generic burglary. *Lopez-Cardona*, 2011 WL 5607634 at *3. *Aguila-Montes* accordingly did not contradict or affect *Becker*'s holding that first-degree burglary under § 459 is a crime of violence because it involves a substantial risk that physical force may be used in the course of committing the offense. *Id.* at *2-3.

**[4]** Kwong attempts to avoid the reach of *Becker* by contending that post-*Becker* amendments to California Penal Code § 460 had the effect of sweeping within the definition of first-degree burglary some structures that are not inhabited, so that unlawful entry into them would not involve a substantial risk of the use of force. At the relevant time in *Becker*, § 460(a) provided:

> [E]very burglary of an inhabited dwelling house or trailer coach as defined by the Vehicle Code, or the inhabited portion of any other building, is burglary of the first degree.

This definition clearly required that each prohibited entry be of an inhabited structure. At the time of Kwong's conviction, however, § 460(a) had been amended to state:

> Every burglary of an inhabited dwelling house, vessel, as defined in the Harbors and Navigation Code,

which is inhabited and designated for habitation, floating home, as defined in subdivision (d) of Section 18075.55 of the Health and Safety Code, or trailer coach, as defined by the Vehicle Code, or the inhabited portion of any other building, is burglary of the first degree.

Kwong contends that the intervening amendments, in adding vessels and floating homes, modified the sentence structure so that the word "inhabited" did not modify "floating home" and no longer modified "trailer coach." Although Kwong's interpretation of the amended statute is grammatically permissible, the amended statute can also be read so that the word "inhabited," as it first appears, modifies not only "dwelling house" but also "vessel," "floating home" and (as in the prior version of the statute) "trailer coach." It is true that the latter reading results in surplusage by twice describing "vessel" as inhabited, but "[r]ules such as those directing courts to avoid interpreting legislative enactments as surplusage are mere guides and will not be used to defeat legislative intent." *People v. Cruz*, 919 P.2d 731, 743 (Cal. 1996). It defies common sense to conclude that the legislature, in specifying additional inhabited structures to be included in § 460, intended to remove one or more structures from the otherwise uniform requirement of first-degree burglary that the structures must be inhabited. The California Supreme Court does not understand § 460 in its amended form to include any uninhabited structures with its definition of first-degree burglary. *See People v. Anderson*, 211 P.3d 584, 589 (Cal. 2009) ("First degree burglary is a greater substantive offense than second degree burglary because it requires proof of all the elements of second degree burglary *and* the additional element that the area entered was used as a dwelling."); *cf. Cruz*, 919 P.2d at 743 (stating that the intent of the legislature in expressly adding vessels to § 460 was "to ensure that vessels would receive the *same* protection as other habitations."). We agree with that understanding, and construe the amended § 460(a) to require

unlawful entry of an inhabited structure to meet its definition of first-degree burglary.

### C. Sufficiency of Abstract of Judgment to Establish Conviction for First-Degree Burglary

In *United States v. Navidad-Marcos*, 367 F.3d 903 (9th Cir. 2004), we squarely held that a notation in an abstract of judgment was insufficient by itself to establish what crime a defendant was convicted of. *Id.* at 908-09; *see also Sandoval-Lua v. Gonzales*, 499 F.3d 1121, 1130 n.8 (9th Cir. 2007). The question arises, however, whether our subsequent en banc decision in *United States v. Snellenberger*, 548 F.3d 699 (9th Cir. 2008) (en banc), undermines *Navidad-Marcos*.[4]

In *Snellenberger,* the charging document to which the defendant pleaded guilty contained two counts of burglary in violation of California Penal Code § 459: count 1 charged burglary of a dwelling, and count 2 charged burglary of a vehicle. The only evidence indicating which count the defendant pleaded guilty to was a minute order, which included two notations indicating that the plea was to count 1. We noted that a minute order was not among the documents, such as a plea agreement or transcript of plea hearing, listed by the Supreme Court in *Shepard v. United States*, 544 U.S. 13, 16 (2005), as being proper subjects of consideration in applying a modified categorical approach. We pointed out, however, that the *Shepard* "list was illustrative; documents of equal reliability may also be considered." 548 F.3d at 701. We then held that the minute order could be considered:

> The clerk's minute order easily falls within the category of documents described [in *Shepard*]: It's prepared by a court official at the time the guilty plea is taken (or shortly afterward), and that official is

---

[4]This question was left open in our recent decision in *Ramirez-Villalpando v. Holder*, 645 F.3d 1035, 1041 n.1 (9th Cir. 2011).

charged by law with recording the proceedings accurately.

*Id.* at 702. We rejected the defendant's argument that the minute order cannot be considered because there is no evidence that it was shown to the parties:

> [I]t's enough that the minute order was prepared by a neutral officer of the court, and that the defendant had the right to examine and challenge its content, whether or not he actually did. Having failed to challenge or correct the minute order in state court—perhaps because there wasn't a basis for doing so—Snellenberger is now bound by what it says: He pleaded nolo contendere to the burglary of a dwelling. . . .

*Id.*

**[5]** *Snellenberger* did not explicitly overrule *Navidad-Marcos*, but it is clear to us that its reasoning is inconsistent with that decision. Everything that the en banc court said of the minute order in *Snellenberger* applies to the abstract of judgment in Kwong's case. As the California Supreme Court has stated:

> [T]he abstract is a contemporaneous, statutorily sanctioned, officially prepared clerical *record* of the conviction and sentence. It may serve as the order committing the defendant to prison ([California Penal Code] § 1213), and is " 'the process and authority for carrying the judgment and sentence into effect.' [Citations]." . . . When prepared by the court clerk, at or near the time of judgment, as part of his or her official duty, it is cloaked with a presumption of regularity and reliability. . . .
>
> Defendant raises no basis for a conclusion that a contemporaneous, officially prepared abstract of

judgment which clearly describes the nature of the prior conviction should not, in the absence of rebuttal evidence, be presumed reliable and accurate.

*People v. Delgado*, 183 P.3d 1226, 1234 (Cal. 2008). We agree with, and adopt, this reasoning.

**[6]** At no point in his removal hearing or appeal to the BIA did Kwong present any evidence that the abstract of judgment was incorrect in specifying a plea to first-degree burglary, and he makes no such contention here. The record therefore supports the IJ's ruling, adopted by the BIA, that Kwong was convicted of first-degree burglary.[5] Because our precedent establishes that a conviction for first-degree burglary under California Penal Code § 459 is a crime of violence, Kwong is removable as an alien convicted of an aggravated felony. *See* 8 U.S.C. § 1101(a)(43)(F); 18 U.S.C. § 16(b).

### III. Motion to Remand—Ineffective Assistance of Counsel

Kwong argues that the BIA erred in denying his motion to remand, which was based principally on Kwong's allegation of his prior counsel's ineffective assistance. "This court reviews BIA denials of motions to reopen for abuse of discretion . . . , but reviews purely legal questions, such as due process claims, de novo." *Iturribarria v. INS*, 321 F.3d 889, 894 (9th Cir. 2003). "[I]neffective assistance of counsel in a deportation hearing results in a denial of due process under

---

[5]The IJ also stated that the two-year sentence noted in the abstract of judgment confirmed that the conviction was for first-degree burglary because the maximum for second-degree burglary was one year. This statement appears to be erroneous; if second-degree burglary results in a sentence to state prison, the sentence may exceed one year, up to a maximum of three years. *See* Cal. Penal Code § 18(a); *see also, e.g., People v. Soto*, 166 Cal.App.3d 770 (1985). The IJ also relied, however, on the notation of first-degree burglary, which we find sufficient to sustain her decision.

the Fifth Amendment only when the proceeding is so funda-
mentally unfair that the alien is prevented from reasonably
presenting her case." *Id.* at 899. To prevail, Kwong first "must
demonstrate that counsel [failed to] perform with sufficient
competence. Second, [he] must show that [he was] prejudiced
by [his] counsel's performance." *Maravilla v. Ashcroft*, 381
F.3d 855, 858 (9th Cir. 1994) (internal quotation marks and
citation omitted).

Kwong argues that the BIA applied the wrong standard in
judging prejudice from ineffective assistance of counsel,
because it stated that the evidence presented by Kwong in his
motion to reopen "falls far short of being sufficient to con-
vince us that the Immigration Judge would have granted that
form of relief if the evidence in question had been presented
at the hearing." Kwong contends that the proper standard is
whether the missing evidence "may have affected the out-
come of the proceedings," *id.* at 858-59, and that the BIA
accordingly erred in assessing whether that evidence "would
have" changed the result.

We need not reach that question, however, because the ini-
tial inquiry in assessing a claim of ineffective assistance is
whether the performance of counsel was "unconstitutionally
ineffective." *Id.* at 858. The BIA made it quite clear that it did
not find any such deficiency; it reviewed the actions of coun-
sel and summarized its holding by stating: "In short, we find,
upon the facts of this case, that there was no ineffective assis-
tance of counsel, and thus necessarily there was not a showing
by the respondent that the assistance of counsel was so inef-
fective as to have impinged upon the fundamental fairness of
the hearing."

[7] Our review of the record convinces us that the BIA did
not err in ruling that counsel's performance was not constitu-
tionally deficient, particularly in light of the facts that counsel
had to work with.[6] Counsel interrogated Kwong about

---

[6]Kwong testified that, if he were returned to China, he would be denied
admission or locked up because he had abandoned his Chinese residency.

Kwong's fears about being returned to China and the reasons for them. Counsel presented sufficient evidence in support of Kwong's claim for withholding of removal to permit the IJ to make a reasoned decision on the merits of that claim. We conclude that there was no violation of due process.

**PETITION FOR REVIEW DENIED.**

---

In answer to inquiries by the IJ, Kwong testified that neither he nor any member of his family had ever been arrested or detained by Chinese authorities, that he had never openly criticized the government, and that he belonged to no religious organization.