**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            v.

DENNIS STRICKLAND,
            *Defendant-Appellant.*

No. 08-30091

D.C. No.
6:07-CR-00021-
CCL-1

OPINION

Appeal from the United States District Court
for the District of Montana
Charles C. Lovell, District Judge, Presiding

Argued and Submitted
September 23, 2009—San Francisco, California

Filed April 19, 2010

Before: Alex Kozinski, Chief Judge, Mary M. Schroeder,
Stephen Reinhardt, Diarmuid F. O'Scannlain,
Pamela Ann Rymer, Sidney R. Thomas, Barry G. Silverman,
Marsha S. Berzon, Jay S. Bybee, Consuelo M. Callahan and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Callahan;
Concurrence by Chief Judge Kozinski;
Concurrence by Judge Thomas;
Dissent by Judge Berzon;
Dissent by Judge Reinhardt

5767

## COUNSEL

Anthony R. Gallagher, Federal Defendant, and Michael Donahoe (argued), of Helena, Montana, for defendant-appellant Dennis Strickland.

Will W. Mercer, United States Attorney, Ryan M. Archer (argued), Marcia Hurd, and Eric B. Wolff, Assistant United States Attorneys, of Billings, Montana, for the United States.

**OPINION**

CALLAHAN, Circuit Judge:

Dennis Strickland appeals following his guilty-plea conviction for receipt and possession of child pornography. He challenges the government's proof at sentencing that a prior Maryland conviction for child abuse was a predicate offense relating to sexual abuse of a minor under 18 U.S.C. § 2252A(b)(1) and (2) resulting in an increased statutory minimum and maximum sentence. To show that the prior Maryland conviction was a predicate offense, the government offered a Maryland court docket sheet and sex offender registration documents signed by Strickland from the states of Washington and Montana. We affirm the district court's judgment on the basis that the docket sheet for the Maryland conviction establishes that the predicate offense was for sexual abuse of a child, and accordingly, do not reach the question of whether the district court could consider Strickland's sex offender registration forms.

I

Strickland was charged in a two-count indictment with Receipt of Child Pornography (Count I), in violation of 18 U.S.C. § 2252A(a)(2), and Possession of Child Pornography (Count II), in violation of 18 U.S.C. § 2252A(a)(5)(B). He pleaded guilty to both counts without a plea agreement. Strickland's presentence report ("PSR") noted that he had been convicted in Maryland in 2002 for child abuse.[1] The PSR described the incidents of abuse in graphic detail, and treated the conviction as a sexual offense. Strickland subsequently pleaded guilty, and the prior sexual offense triggered heightened statutory minimum and maximum sentences.[2] The PSR

---

[1]Strickland was convicted under former MARYLAND CODE ART. 27, § 35C (currently codified at MD. CODE ANN., CRIM. LAW § 3-601(West 2009)).

[2]Strickland's statutory minimum and maximum sentence for Count I was increased from 5 to 20 years to 15 to 40 years. *See* 18 U.S.C.

determined that Strickland's total offense level was 35, his criminal history category was III, and his advisory sentencing guideline range was 210 to 262 months.

Strickland objected that his Maryland conviction was not categorically a predicate offense under 18 U.S.C. § 2252A(b) and could not be used to enhance his statutory penalties. Strickland reasoned that the Maryland statute proscribed both physical and sexual abuse of a minor, and was therefore over-inclusive because a prior conviction solely for physical abuse would not be a qualifying offense under § 2252A(b). He argued that the government failed to introduce acceptable documentation to prove that his prior offense was related to sexual abuse.[3]

At the sentencing hearing, the government introduced several documents in support of the enhancement. It offered an uncertified docket sheet from the Circuit Court for Baltimore County, Maryland, showing that in July 2002, Strickland had been charged with one count of "child abuse" pursuant to MARYLAND CODE ART. 27, § 35C; two counts of sexual offense-fourth degree; two counts of attempted sexual offense-fourth degree; and one count of perverted practice. In November 2002, Strickland pleaded guilty to the count of "child abuse" and the other charges were dismissed. Under the heading "Docket Information," the docket sheet stated: "Registration required under Criminal Procedure Sec. 11-704. Defendant to register DNA. Defendant is a child sex offender."

_____

§ 2252A(b)(1). His sentencing range for Count II was increased from "not more than 10 years" to "not less than 10 years nor more than 20 years." *See* 18 U.S.C. § 2252A(b)(2).

[3]Strickland also objected to several other sentencing enhancements in the PSR, but he abandoned those objections at the sentencing hearing and they are not part of the instant appeal.

The government also offered sex offender registration documents signed by Strickland from the states of Washington and Montana. Strickland had registered in these states as required by their laws when he had moved to those states following his Maryland conviction.

The district court held that the Baltimore County docket sheet was part of the state court record and therefore could properly be considered. The court concluded that the docket sheet was accurate beyond a reasonable doubt given the other information and evidence before the court, including the two state sexual offender registration forms. The court overruled Strickland's objection and concluded that the PSR calculations were correct. The court sentenced Strickland to concurrent terms of 240 months incarceration on each count of the indictment.

Strickland appealed and a three-judge panel of our court affirmed the district court's judgment, holding that the sex offender registration forms could be considered when determining the nature of Strickland's 2002 Maryland conviction. *United States v. Strickland*, 556 F.3d 1069, 1070 (9th Cir. 2009). We then voted to rehear this appeal en banc. *United States v. Strickland*, 569 F.3d 956, 957 (9th Cir. 2009).

II

On appeal, Strickland argues that the government failed to produce judicially noticeable documents sufficient to prove that his Maryland conviction for child abuse was a predicate offense under 18 U.S.C. § 2252A(b). He contends that the court misapplied the modified categorical approach and improperly relied on the PSR, the Maryland docket sheet, and the two sex offender registration forms when determining that his prior conviction was a predicate offense. "We review de novo a district court's conclusion that a prior conviction qualifies for a sentencing enhancement." *United States v. Almazan-Becerra*, 537 F.3d 1094, 1097 (9th Cir. 2008).

**[1]** A defendant convicted for violating § 2252A is subject to an enhanced sentence if he has a prior state conviction "relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor." 18 U.S.C. § 2252A(b)(1), (2). We have broadly interpreted this statute to apply not simply to state offenses that are equivalent to sexual abuse, but rather to "any state offense that stands in some relation, bears upon, or is associated with that generic offense." *United States v. Sinerius,* 504 F.3d 737, 743 (9th Cir. 2007).

**[2]** The determination of whether a prior conviction qualifies as a predicate sex offense under § 2252A(b) is governed by the categorical approach announced in *Taylor v. United States*, 495 U.S. 575, 600-02 (1990). The categorical approach "generally requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense." *Id.* at 602. This approach requires a comparison of the elements of the state criminal offense with the predicate offense as defined in the federal statute. *Sinerius*, 504 F.3d at 740. Here, the terms "aggravated sexual abuse," "sexual abuse," and "abusive sexual conduct involving a minor" found in § 2252A(b) must be compared with the elements of the Maryland child abuse statute under which Strickland was convicted. Under this approach, a conviction under the Maryland statute will categorically qualify as a predicate offense "only if the full range of conduct covered by the [Maryland] statute falls within the meaning of those terms." *Id.*; *see also United States v. Baza-Martinez*, 464 F.3d 1010, 1014 (9th Cir. 2006) ("[I]n order for a violation of the state statute to qualify as a predicate offense, the full range of conduct covered by the state statute must fall within the scope of the federal statutory provision.") (internal quotation marks and citation omitted) (alteration in original).

**[3]** The government here concedes that Strickland's conviction for the Maryland offense of child abuse is not categorically an offense "relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor" because

at the time of Strickland's offense the Maryland statute defined child abuse to include both "physical injury" and "sexual abuse."**⁴** The Maryland statute thus covered conduct that is broader than the conduct contemplated by § 2252A(b), which requires that the prior offense be related to *sexual* abuse to qualify for an enhanced federal sentence. Because the full range of conduct covered by the Maryland statute does not fall within the meaning of the federal statute, Strickland's prior conviction is not categorically a predicate offense under § 2252A(b).

**[4]** Where, as here, the state statute is broader than the federal definition of a predicate offense, "we must use the so called modified categorical approach, which requires us to determine — if we can — whether the conduct for which the defendant was convicted fits within the federal definition of the offense." *United States v. Snellenberger*, 548 F.3d 699, 701 (9th Cir. 2008) (en banc) (citing *Taylor*, 495 U.S. at 602). In doing so, the Supreme Court has directed that the inquiry is "generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard v. United States*, 544 U.S. 13, 16 (2005). This list, however, is illustrative and other "documents of equal reliability may also be considered." *Snellenberger*, 548 F.3d at 701. Our purpose is to determine whether documentation or judicially noticeable facts clearly establish that the defendant pleaded guilty to facts covered by the predicate offense. *United States v. Gomez-Leon*, 545 F.3d 777, 783-84 (9th Cir. 2008) (noting that "we may make a limited inquiry into the facts of the underlying conviction to determine whether the conviction was based on all of the elements of a qualifying predicate offense") (internal quotation

---

**⁴***See* Md. Code Art. 27, § 35C(a)(2) (2002) (repealed eff. Oct. 1, 2002). Physical injury and sexual abuse of children are now covered in separate statutory provisions. *See* Md. Code Ann., Crim. Law, §§ 3-601, 3-602 (West 2009).

marks and citation omitted); *United States v. Crawford*, 520 F.3d 1072, 1078 (9th Cir. 2008) (noting that a prior offense may qualify as a career offender predicate offense if "documentation or judicially noticeable facts clearly establish that the conviction is a predicate conviction for enhancement purposes") (quotation marks and alteration omitted).

## III

We determine that the docket sheet from the Maryland Circuit Court clearly establishes that Strickland pleaded guilty to sexual abuse of a minor, and thus the district court properly gave him an enhanced sentence. In reaching this conclusion we determine that: (1) pursuant to our decision in *Snellenberger*, the district court properly considered the docket sheet; (2) in this instance, there was no need for the docket sheet to be certified; and (3) the docket sheet clearly indicates that Strickland pleaded guilty to sexual abuse of a minor.

### A. *The district court properly reviewed the docket sheet.*

**[5]** In *Snellenberger*, we held that a court may consider a clerk's minute order when applying the modified categorical approach. 548 F.3d at 702. We held that the minute order had the requisite reliability because (1) it was "prepared by a court official at the time the guilty plea is taken (or shortly afterward)," (2) the "official is charged by law with recording the proceedings accurately," and (3) "the defendant had the right to examine and challenge its content." *Id.*

**[6]** The docket sheet from the Circuit Court of Maryland meets these criteria. First, the Maryland Rules provide that the clerks of Maryland Circuit Courts are responsible for maintaining dockets. Md. Rule 16-305. Second, Maryland law provides that the court clerk has "custody of the books, records, and papers of his office" and shall "[m]ake proper legible entries of all proceedings of the court and keep them in well-bounded books or other permanent form." MD. CODE ANN.,

CTS. & JUD. PROC. § 2-201(a)(1)-(2) (West 2009). Moreover, Maryland Rule 8-202(f) states that entry of a judgment in a case "occurs . . . when the clerk . . . first makes a record in the writing of the judgment . . . on the file jacket, on a docket within the file, or in a docket book . . . and records the actual date of the entry." We determine that under the applicable state law, the docket sheet meets the first two criteria set forth in *Snellenberger* for use of a document by a court when determining whether "the conduct for which the defendant was convicted fits within the federal definition of the offense." 548 F.3d at 701.

**[7]** Our review of Maryland case and statutory law shows that the docket sheet also meets the third prong of the *Snellenberger* standard. Rule 4-621 of the Maryland Rules states that "[c]lerical mistakes in . . . parts of the record may be corrected by the court at any time on its own initiative, or on motion of any party after such notice." The rules also provide that "[o]n motion or on its own initiative, the appellate court may order that an error or omission in the record be corrected." Md. Rule 8-414(a). Furthermore, Maryland courts have held that mistakes in the docket entry should be corrected. *Caldwell v. State*, 884 A.2d 199, 220 (Md. Ct. Spec. App. 2005) (holding that the clerk must correct the docket entries to reflect the not guilty verdict reflected in the transcript). Accordingly, we conclude that Strickland and his counsel had the right under Maryland law to examine and challenge the content of the docket sheet. Indeed, Strickland has not contended otherwise.

B. *In this instance, the docket sheet did not have to be certified.*

Despite existing Maryland law, Strickland argues that the district court should not have considered the docket sheet because it was not certified. When pressed at oral argument, counsel could not offer any reason for questioning the accuracy of the docket sheet, but nonetheless asserted that unless

it was certified the docket sheet could not be considered. Some support for this position might be extracted from the fact that "the government bears the burden to demonstrate that the prior conviction was a qualifying offense." *Gomez-Leon*, 545 F.3d at 785; *see also United States v. Kelly*, 422 F.3d 889, 895 (9th Cir. 2005) (noting that "the government has the burden to establish clearly and unequivocally the conviction was based on all of the elements of a qualifying predicate offense") (internal quotation marks and citation omitted).

[8] This burden, however, does not require that the government routinely provide a certified copy of a docket sheet or minute order, at least where, as here, there is no reason to question the proffered docket sheet's authenticity or content. Although certification was not raised in *Snellenberger*, our conclusion that certification is not a prerequisite to consideration of a docket sheet flows from our discussion of a defendant's responsibility to challenge a minute order.[5] In *Snellenberger*, we held that a defendant's ability to check the case file and to ensure its accuracy, coupled with defense counsel's professional obligation to do so, allowed a court to find that a minute order met the reliability standard set forth in *Shepard. Snellenberger*, 548 F.3d at 702. Pursuant to this

---

[5]We wrote:

> It's not clear from the record whether parties to a criminal case in California are given copies of the clerk's minute order at the time it is placed in the case file, but there is certainly no suggestion that it's a secret document. A defendant can always check the case file and ensure that any materials placed there accurately reflect the proceedings; presumably, doing so is part of every criminal defense lawyer's professional obligation. In any event, by analogy to transcripts, it's enough that the minute order was prepared by a neutral officer of the court, and that the defendant had the right to examine and challenge its content, whether or not he actually did. Having failed to challenge or correct the minute order in state court — perhaps because there wasn't a basis for doing so — Snellenberger is now bound by what it says . . . .

*Snellenberger*, 548 F.3d at 702.

approach, the fact that a docket sheet is not certified is not, in itself, a legitimate ground for questioning its reliability. Rather, in light of the ability of a defendant to check the case file and the obligation of counsel to do so, a docket sheet, regular on its face, is entitled to a presumption of authenticity. Of course, if the defendant offers any reasonable ground for questioning the document, a district court may require that the document be certified or otherwise authenticated. However, here, counsel offered no reason to question the docket sheet. Accordingly, we hold that even without certification, the docket sheet, which Maryland law requires be prepared and maintained by a court clerk, and which defendant has a right to review and correct, is of sufficient reliability under *Shepard* and *Snellenberger*. Thus, the district court properly considered it in determining whether Strickland was convicted of sexual abuse of a minor.[6]

C.   *The docket sheet clearly indicates that Strickland pleaded guilty to sexual abuse of a minor.*

**[9]** Although the docket sheet is not a model of clarity, a fair reading of the document leaves no doubt that Strickland pleaded guilty to "abusive sexual conduct involving a minor." 18 U.S.C. § 2252A(b)(1), (2). It is true that the statute to which he pleaded guilty, Maryland Code Art. 27§ 35C, included both "physical injury" and "sexual abuse" of a child. However, two entries on the docket sheet confirm that the plea was to sexual abuse. First, the docket sheet states, "Defendant is a child sex offender." As Strickland only pleaded guilty to one count, that count must be the basis for this determination. Certainly, if it were inaccurate, Strickland or his attorney could have objected as allowed by Maryland law. *See*

---

[6]As our analysis makes clear, we hold that the district court properly relied upon the docket sheet because Maryland's numerous statutes and rules ensure that it complies with the requirements we announced in *Snellenberger*. We express no opinion as to whether a different state's docket sheet would pass muster under those requirements.

*Caldwell*, 884 A.2d at 220. Second, the docket sheet states: "Registration required under Criminal Procedure Sec. 11-704. Defendant to register DNA." Section 11-704(a) requires registration of sexual offenders and child sexual offenders. MD. CODE ANN., CRIM. PROC. § 11-704(a) (West 2009). Because Strickland pleaded guilty to a single count, the requirement that he register under § 11-704(a) confirms that the plea was to sexual abuse rather than physical abuse of a child.[7] Thus, the only fair reading of the docket sheet is that Strickland pleaded guilty to sexual abuse of a minor.

IV

The modified categorical approach is not a judicial version of three-card monte. Rather, the challenge is to determine whether a conviction under a non-categorical state statute was clearly based on facts that meet the federal generic definition of the crime. *See Taylor*, 495 U.S. at 600-02; *Shepard*, 544 U.S. at 25; *Snellenberger*, 548 F.3d at 701. Here, the docket sheet, like the minute order in *Snellenberger*, has the requisite reliability to be considered and allows for no reasonable conclusion other than that Strickland pleaded guilty to sexual abuse of a child. Nothing more is required by statute or case law.[8] Accordingly, the district court's enhancement of Strickland's sentence is **AFFIRMED.**

---

[7]Section 11-704(a) requires the registration of "a child sexual offender," an "offender," a "sexually violent offender" and a "sexually violent predator." Strickland was not alleged to be a "sexually violent offender" or a "sexually violent predator." Accordingly, the registration requirement was premised on Strickland being a "child sexual offender" unless there is some plausible argument that he might have been an "offender," and that an "offender" might include a person who had not engaged in abusive sexual conduct involving a minor. There is no such argument because under the definition of "offender" set forth in Section 11-701(h) of the Maryland Code of Criminal Procedures, the only definitions of "offender" that fit the charge against Strickland involve abusive sexual conduct with a minor.

[8]We express no opinion on the propriety of the district court's consideration of Strickland's sex offender registration forms.

KOZINSKI, Chief Judge, concurring:

While I concur with much of the majority opinion, I agree with Judge Reinhardt that the failure to decide whether the district court erred in relying on Strickland's sexual offender registration forms is both wrong and unfortunate. It's wrong for the reasons given by Judge Reinhardt and one more: The district judge below relied on the registration forms in finding that Strickland had been convicted of a predicate offense under 18 U.S.C. § 2252A(b)(1); we don't know whether he would have made the same finding in the absence of the forms. If his reliance on the registration forms was improper as a matter of law, we should remand and give the district judge an opportunity to make findings without relying on any improper documents.

Which brings me to why it's unfortunate that the majority doesn't address the registration forms. As this case illustrates, obtaining reliable information about past convictions—some going back many years or decades—can be difficult. The evidence that the government presented here is marginal. The docket sheet, on which the majority relies in affirming the district court, suffers from the defects Judge Berzon points out in her dissent. Berzon Dissent at 5793-94. Had Strickland preserved the argument that the lack of authentication or certification barred the district court from relying on the docket sheet, I'm not at all sure we could affirm, as there is almost nothing in the record about what this document is or where it came from. But Strickland waived that argument. In his opening brief he refers to the document as "an uncertified State court docket sheet." He thus concedes it's a docket sheet but doesn't argue that the district court erred in relying on it because it's uncertified. The government's brief, naturally, says nothing on this point. This important issue should be decided in a case where the parties actually brief it so we can make an informed decision. I would therefore deem that objection waived. *See, e.g.*, *Dream Games of Ariz., Inc.* v. *PC Onsite*, 561 F.3d 983, 994-95 (9th Cir. 2009).

That said, it would certainly have been better if the government had produced the "agreed statement of facts" that Judge Berzon refers to in her dissent. Berzon Dissent at 5795. This document sounds like it falls squarely within the ambit of *Shepard* v. *United States*, 544 U.S. 92 (2005), and would have eliminated all cavil as to whether Strickland was convicted of a sex crime. Judge Berzon accuses the government of sloth, but I suspect the problem is actually one of unavailability: The case materials pertaining to Strickland's 2002 Maryland conviction may not be available at all, or available only with great difficulty. This may be typical of many cases across the country, particularly those from the era before electronic case filing. The kind of evidence the Supreme Court described in *Shepard*, 544 U.S. at 26—the charging document, the terms of a plea agreement, the transcript of a colloquy in which defendant confirms the factual basis for his plea—may not be available for many convictions that serve as predicates for federal sentencing enhancements.

Hence the significance of sex offender registration forms: They are ubiquitous, locally available and frequently updated. Most importantly, they are personally signed by defendants pursuant to a legal obligation backed by criminal penalties. The government here was able to come up with three such forms signed by Strickland over the course of two years, all certifying that he had been convicted of a sex offense. The sex offender change-of-address form Strickland filed with the City of Great Falls on August 4, 2006, has an attached database printout that describes his crime as "Maryland Sexual Child Abuse" and provides the precise date of Strickland's sentencing. The Montana Department of Justice form Strickland signed on February 8, 2006, notes that Strickland was sentenced for the Maryland offense in November 2002, and identifies it as a sexual offense involving Strickland's 16-year-old step-son. These documents, when taken together with the docket sheet, leave no room for doubt that Strickland was previously convicted of a crime "relating to . . . abusive

sexual conduct involving a minor or ward." 18 U.S.C. § 2252A(b)(1).

This kind of problem is sure to arise again, so it's important to decide whether sex offender registration forms may be used to clarify the nature of a prior conviction or guilty plea under the modified categorical approach of *Taylor* v. *United States*, 495 U.S. 575 (1990). By ducking the question, the majority leaves the field to the dissenters, who present a superficially plausible argument that the district court's reliance on such records violated *Shepard*, 544 U.S. at 24-26. I present the contrary view, lest my agreement be inferred from silence.

The most one can say about *Shepard* is that it doesn't affirmatively authorize the use of these registration forms. This may be because the *Shepard* majority wanted to limit the *Taylor* inquiry to a narrow range of judicially-created documents (as the dissenters here argue), but more likely it's because the Court wasn't thinking about registration forms and other post-conviction admissions by the defendant. *Shepard* dealt with statements made and documents created at the time the plea was entered and the Court thus had no occasion to address any admissions made by the defendant at a later point in time.

When Shepard pleaded guilty to his earlier crime, the police reports were not part of the plea agreement and Shepard therefore did not admit to them by pleading guilty. Nor did the police reports have any judicial imprimatur; for all we know the judge who accepted the guilty plea was not even aware of them and certainly did not adopt them as true. The Supreme Court therefore held that the police reports couldn't be considered in determining the nature of that conviction. Some of the Court's reasons involved practical considerations about avoiding "collateral trials" and "evidentiary disputes." *Shepard*, 544 U.S. at 19-23 & n.4. Equally significant, however, was the concern that importing a third-party narrative to which defendant didn't affirmatively assent would violate the rule of *Apprendi* v. *New Jersey*, 530 U.S. 466, 490 (2000).

*See Shepard*, 544 U.S. at 24-26; *id.* at 26-28 (Thomas, J., concurring). The *Shepard* plurality and Justice Thomas were concerned that the factual reconstruction process would bind defendants to facts (there, Shepard's entry into a building) that they never admitted and that no jury had found beyond a reasonable doubt.

Our case is materially different. The government here is not trying to saddle Strickland with facts to which he never assented. Rather, the government asks us to determine what facts Strickland *did* admit. The best evidence of that would be the agreed factual statement presented with his plea, the plea colloquy or some similar document contemporaneous with the plea itself. But almost as good would be Strickland's own admission, in open court, that his prior conviction was for sexually abusing a child, as such an admission complies with *Apprendi*. *See United States* v. *Booker*, 543 U.S. 220, 244 (2005) ("Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be *admitted by the defendant* or proved to a jury beyond a reasonable doubt." (emphasis added)).

Sex offender registration forms are not quite the same as in-court admissions, but they share many of the same attributes: They are personally assented to by the defendant; they are official, formal statements made in an environment where the necessity of being truthful is likely to be impressed on the registrant; filling them out is strongly against the registrant's personal interest, as being a registered sex offender will likely make him an outcast in the community; they do not attempt to reconstruct or re-interpret the facts and circumstances of the earlier crime, but merely report the prior conviction; and the registrant is speaking pursuant to an obligation imposed by law, which requires that the information provided be truthful and accurate.

Some registrants may not seek advice of counsel before completing a registration form, though I'm certain many do

consult lawyers before filling out forms that they must find oppressive and odious. It's entirely possible that a registrant may be mistaken about his obligation to register, though I'm reasonably confident that—just as people seldom commit tax errors in the government's favor—far more people mistakenly fail to register than those who mistakenly sign up. But this risk of error, just like that in the minute order we approved in *United States* v. *Snellenberger*, 548 F.3d 699, 702 (9th Cir. 2008) (en banc), isn't fatal. If a defendant is confronted with a registration form that he signed in error, he can try to amend the form, *see id.*, or explain the error and present contemporaneous records showing that he was not actually required to register as a sex offender. I don't see what's unfair or improper about placing on defendant the burden of showing that a registration form he signed before a witness, under penalty of law, does not prove what it purports to say on its face.

Judge Berzon argues that the forms in this case "do not include direct admissions by Strickland," Berzon Dissent at 5798, because Strickland's signature generally appeared on pages of each form different than those containing the most incriminating information. I don't see why a signature on the last page of a multi-page form doesn't indicate assent to the entire document. *See, e.g.*, 2 *Williston on Contracts* § 6:44 (4th ed., West 2009) ("[W]here an offeree signs a document it is generally held to be bound by the document's terms, even if the offeree signs in ignorance of those terms."). Take the Montana Department of Justice form, which is only two pages. On page one it notes that Strickland's offense was "sexual" rather than "violent" or "both," and has a box labeled "Sex Offender Treatment Status," showing that Strickland "Completed Treatment" in "April 2005." And on the second page, just three lines below Strickland's signature, it clearly says that it's a two-page form, so we know that the page with Strickland's signature wasn't simply attached after-the-fact. Moreover, Strickland's signature certifies that he "understand[s his] duty to register." By certifying that he understands his duty to register on a form which expressly

predicates that duty on his prior sexual offense, Strickland clearly acknowledged the sexual nature of his prior conviction.

Judge Berzon's objection to the use of these forms is, in any event, a side-show. The question we must decide is whether sex offender registration forms, in general, may be relied on by a district court. That *these* forms are more ambiguous than Judge Berzon would prefer is neither here nor there. Many other defendants will have signed much clearer forms and the alleged ambiguity of these forms has no bearing on the larger question of whether such forms are usable at all. *See, e.g.*, *Snellenberger*, 548 F.3d at 702 (authorizing the use of any minute order that "conform[s] to the essential procedures described above").

In any event, the registration form wouldn't be sufficient by itself to support a finding that a defendant had committed the predicate offense. Under the approach advanced by the government, the form would have to be supported by evidence from the court of conviction that defendant had, in fact, been convicted of a crime that could serve as a predicate offense. The registration form—constituting defendant's own admission of the prior offense—could resolve any ambiguity about what crime he had long ago been convicted of. Such ambiguities are bound to arise with some regularity, depending on the completeness and efficacy of record-keeping by the thousands of court systems in the United States. It is unwise to turn our backs on registration forms as a tool for resolving them. Unless and until the Supreme Court holds otherwise, I would hold that district courts may consider these forms, in conjunction with other evidence, to determine whether a defendant's prior conviction is a qualifying predicate offense.

Because the district court here considered Strickland's registration forms together with the docket sheet, and the documents together leave no doubt that his Maryland conviction was for sexual conduct involving a minor or ward, I would

endorse what the district court did here and affirm on that basis.

---

THOMAS, Circuit Judge, concurring:

I agree with Judge Berzon that docket sheets, as a general category, are not inherently reliable and do not qualify as documents that satisfy the rigorous standard necessary to be used as conclusive proof of a prior conviction. *Shepard v. United States*, 544 U.S. 13, 21 (2005); *United States v. Navidad-Marcos*, 367 F.3d 903, 908 (9th Cir. 2004).

However, I am persuaded, under the unique circumstances of this case, that the tendered evidence was sufficient to prove that the defendant's Maryland conviction for child abuse was a predicate offense under 18 U.S.C. § 2252A(b). Therefore, I concur in Judge Callahan's majority opinion.

The majority opinion does not reach the question as to whether the registration documents qualify as judicially noticeable documents sufficient to satisfy the requirements of *Shepard* and its progeny. If I were to reach that question, I would agree with Judge Berzon that they do not. Therefore, I join the observations contained in Section III of Judge Berzon's dissent, although it does not affect my joinder of the majority opinion.

---

BERZON, Circuit Judge, with whom Judges SCHROEDER and REINHARDT join, and with whom Judge THOMAS joins as to Part III, dissenting:

Dennis Strickland was convicted of receipt and possession of child pornography. He was sentenced pursuant to 18 U.S.C. § 2252A, which permits a sentencing enhancement if

the defendant has a prior state conviction "relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor." *Id.* Strickland's prior conviction was for child abuse, an offense that, under Maryland law, encompasses both physical and sexual abuse of a child. It is not categorically a predicate offense under § 2252A.

The majority now holds that a Maryland state court document is adequate to prove that Strickland was convicted of a sexual offense. The majority concludes, essentially, that what it refers to as the "docket sheet" in Strickland's Maryland conviction is "close enough" to the minute order we approved in *United States v. Snellenberger*, 548 F.3d 699, 701-2 (9th Cir. 2008), to form the basis for judicial enhancement of his criminal sentence. This conclusion is wrong for three reasons: *First*, docket sheets, as a general category, are not inherently reliable. *Second*, the Maryland statutes and court rules cited by the majority do not demonstrate that docket sheets created in Maryland state courts meet the *Snellenberger* criteria. *Third*, the specific document the majority describes as a docket sheet and views as conclusively proving that Strickland committed a sexual offense is actually a document of some other kind, was not created at the time of his guilty plea, and does not contain a description of the offense of conviction that unambiguously meets the federal criteria. Because the document relied upon by the majority does not satisfy the "demand for certainty when identifying a generic offense" required by *Shepard v. United States*, 544 U.S. 13, 21 (2005), I dissent.

## I.

As the Supreme Court explained in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." This rule is founded on "constitutional protections of surpassing impor-

tance," namely the Sixth Amendment right to trial by an impartial jury. *Id.* at 476.

Because the constitutional rights at stake are so central in criminal cases, "documents used to satisfy a modified-categorical analysis must meet a rigorous standard." *United States v. Navidad-Marcos*, 367 F.3d 903, 908 (9th Cir. 2004) (internal quotation omitted). The record must "unequivocally establish[ ]" that the defendant was convicted of the generically defined crime. *Id.* The sentencing court may determine whether a guilty plea necessarily required the defendant to admit the elements of the generic offense by reference to "the charging document . . . a plea agreement or transcript of colloquy between judge and defendant . . . or [ ] some comparable judicial record." *Shepard*, 544 U.S. at 26.

Docket sheets are, as a general proposition, simply not as reliable as the documents approved in *Shepard*. Nor are they as reliable as the minute order we approved in *Snellenberger*. Minute orders are prepared at the time of the judicial action in question by a clerk who is present and observing the proceedings. Docket sheet entries are often made after the fact based on review of pertinent judicial documents. The process of transposing information onto docket sheets can result in error far more frequently than contemporaneous recording of judicial events by a direct observer.

Indeed, errors on docket sheets are so common that courts often assume discrepancies between conflicting documents have resulted from a clerical error on a docket sheet entry. As we have recognized, elementary oversights in data entry can result in unconstitutional deprivations of liberty. *See Oviatt v. Pearce*, 954 F.2d 1470, 1476 n.4 (9th Cir. 1992) (holding that a county jail system could be held liable under 42 U.S.C. § 1983 for failing to "have *some check* on the ability of a single clerical error to result in prolonged incarceration without arraignment, a bail hearing, or a trial" after the plaintiff was held for 114 days without trial).

The case law is replete with references to docket sheet errors involving dates on which judgments or motions were filed. *See Voravongsa v. Wall*, 349 F.3d 1, 2 n.2 (1st Cir. 2003); *Missouri v. Ring*, 86 S.W.3d 481, 481 n.3; *Curiel v. Fleker*, 558 F. Supp. 2d 1047, 1052 (C.D. Cal. 2008); *Sec. Exch. Comm'n v. Breed*, No. 01 Civ. 7798 (CSH), 2004 WL 1824358, at *8 n.2 (S.D.N.Y. Aug 13, 2004) ("Confusingly, there appear[ ] to be two errors in the Clerk of the Court's docket sheet. . . . Perhaps the lesson to be learned is that attorneys should not merely trust the docket sheet to provide necessary deadlines."); *Browning v. Walters*, 620 N.E.2d 28, 30 (Ind. Ct. App. 1993); *Guardianship of Hurley*, 476 N.E.2d 941, 943-44 & n.4 (Mass. 1985) (observing that the docket sheet reflected that the plaintiff filed a motion to amend his petition over five months after he actually filed it); *Pemiscot County Mem'l Hosp. v. Bell*, 770 S.W.2d 499, 501 (Mo. Ct. App. 1989) (noting that the docket sheet recorded the notice of appeal as being filed eighteen days after it was actually received).

Docket sheets also often contain substantive errors. *Stafford v. Ward*, 60 F.3d 668, 669 n.3 (10th Cir. 1995) (assuming that a missing notation was more likely an error on the docket sheet than an indication that a record was not transmitted to state court judges); *United States v. Ewing*, 445 F.2d 945, 947 n.3 (10th Cir. 1971) (noting that the docket sheet erroneously indicated that the jury had returned a verdict of not guilty, leading to the impression that the appellant had been retried on a count of which he'd been acquitted); *Panko v. Eighth Judicial Dist. Court*, 908 P.2d 706, 707 n.2 (Nev. 1995) (observing that the docket sheet failed to list a real party in interest); *Ferrell v. Wall*, 971 A.2d 615, 622 (R.I. 2009) ("The docket sheet . . . indicates that . . . the motion to reduce applicant's sentence . . . had been withdrawn . . . . The docket sheet entry must be in error.").

Docket errors may also result in records that reflect a conviction for a crime other than that to which the defendant pled

guilty. In *Homan v. Hughes*, 708 S.W.2d 449 (Tex. Ct. App. 1986), the court denied relief to a petitioner who challenged the trial court's nunc pro tunc adjustment of his conviction after a significant error was discovered. The clerk's affidavit read:

> The defendant . . . pled guilty to the offense of aggravated robbery. . . . The defendant signed his plea papers . . . reflecting his plea was to aggravated robbery. For some reason, when I prepared the judgment and sentence in this case, I incorrectly showed the defendant pled to a reduced charge of robbery. . . . Subsequently, I discovered the mistake.

*Id.* at 454 n.4.

In light of the error-prone nature of docket sheets, a district court could not with certainty rely on one without inspecting the state statutes and regulations that govern the creation and maintenance of docket sheets to ensure their accuracy. That is not what *Shepard* approved. In any event, the Maryland rules and statutes on which the majority relies do not establish that guilty pleas are entered into the docket sheet "at the time the guilty plea is taken [ ] or shortly afterward." *Snellenberger*, 548 F.3d at 702. Nor do Maryland Rule 16-305 or the Maryland Code provision cited by the majority contain any reference to the clerk's duty to enter promptly sentences, convictions, or judgments generally. Maryland Rule 8-202(f), similarly, merely states that "entry" of judgment occurs, for the purposes of starting the thirty-day period during which notice of appeal may be filed, "on the day when the clerk of the lower court first makes a record in writing of the judgment, notice, or order on the file jacket, on a docket within the file, or in a docket book." Md. R. 8-202(a), (f). Nothing in this multifarious provision assures that the entry of judgment is even made on a docket sheet, much less that the docket sheet is accurate. Moreover, our approval of the minute order in *Snellenberger* hinged on the fact that such orders are created

"when judgment upon a conviction is rendered." 548 F.3d at 701 (quoting Cal. Penal Code § 1207) (brackets omitted). There is nothing in the Maryland code or court rules preventing the clerk of the court from recording the conviction weeks, months, or years after the judgment is rendered.

If there are any states in which the clerk of court's legal duties guarantee the accuracy and timely entry of their docket sheets, Maryland is not among them.

## II.

In fact, the particular Maryland document at issue here proves the fallibility of docket sheets and similar documents. The information which, according to the majority, proves that Strickland was convicted of a sexual offense was assuredly not entered at the time of his conviction. The document (which I refer to as "the Document" for lack of any indication of what it actually is) has no heading and seems to have been generated as a result of a probation revocation proceeding.[1] The Document shows, under the heading "Charge and Disposition Information," that Strickland's conviction for child abuse was entered on November 6, 2002. A segment of the Document titled "Document Tracking" contains, among other materials reporting the content of related documents, "docket information" as of November 4, 2005, and is headed "Docket." This section includes, after the date November 6, 2002, the statements "Registration required under Criminal Procedure Sec. 11-704. Defendant to register DNA. Defendant is a child sex offender." The Document also bears the notation "[c]ase data converted on 11/04/2005." This note suggests that the November 4, 2005 entry includes information ostensibly reproduced from the docket sheet in Strickland's 2002 conviction, but it does not with the required "certainty," *Shepard*, 544 U.S. at 21, establish that the "case data" was "converted" from a document created at the time of the waiver of

---

[1]A copy of the Document is attached to this dissent.

jury trial, conviction, or sentencing, or that it was reproduced accurately.

Moreover, none of several entries for November 2002 that appear under "Docket" on the 2005 Document states unequivocally that the conviction was for sexual abuse. One entry does state that "Registration is required" under the sex offender statute and that "Defendant is a child sex offender." Neither comment directly ties the registration requirement or the status to the crime of conviction.

In short, it appears the only information indicating that the child abuse conviction was for a sexual offense was entered on the Document three years after the guilty plea, conviction and sentencing. It would be plausible to infer that the 2005 "Docket" entry describing events of November 6, 2002 was created by cutting and pasting a docket sheet entry that was created earlier. "Inferences, however, are insufficient under the modified categorical approach." *Cisneros-Perez v. Gonzalez*, 465 F.3d 386, 393 (9th Cir. 2006). The Document also indicates that Strickland was at some point convicted of a sexual offense. But the sentencing judge necessarily had to draw an inference from the confusing and ambiguous Document to find as a "fact" that the particular conviction in question was for child sexual abuse. By doing so, the district court compromised Strickland's constitutional rights, as protected under *Apprendi*, to a trial by jury of uncertain facts essential to the sentence.

It is worth noting, in this connection, that *Almendarez-Torres v. United States*, 523 U.S. 224, 243-47 (1998), created a narrow exception whereby the fact of a prior conviction need not be alleged in an indictment or proven to a jury beyond a reasonable doubt. Subsequent cases illustrate that *Almendarez-Torres* stands on shaky constitutional ground, giving rise to an obligation strictly to police, rather than to expand, the parameters of that exception lest it topple as entirely without basis. *See Shepard*, 544 U.S. at 25 (caution-

ing that *Almendarez-Torres* does not permit a sentencing judge to resolve any fact that "can be described as a fact about a prior conviction"); *Apprendi*, 530 U.S. at 487, 489 (characterizing *Almendarez-Torres* as "arguabl[y] . . . incorrectly decided" and "at best an exceptional departure from" the Court's sentencing jurisprudence); *United States v. Booker*, 543 U.S. 220, 244 (2005) (reaffirming *Apprendi*); *Butler v. Curry*, 528 F.3d 624, 643-45 (9th Cir. 2008) (emphasizing that the "exception applies only to facts directly reflected in the documents of conviction, not to secondary facts that are derived or inferred from . . the conviction documents" or to "documents that were not developed as a result of [a process with Sixth Amendment safeguards]") (internal quotation omitted). We have accordingly held that *Apprendi* precludes us from broadening *Almendarez-Torres* to encompass past juvenile convictions, *United States v. Tighe*, 266 F.3d 1187, 1194-95 (9th Cir. 2001); removal proceedings, *United States v. Covian-Sandoval*, 462 F.3d 1090, 1097-98 (9th Cir. 2006); or a defendant's probation status, *Butler*, 528 F.3d at 645.

The same principles dictate that a sentencing court may not "read[ ] between the lines" to establish a predicate conviction. *United States v. Sandoval-Venegas*, 292 F.3d 1101, 1109 (9th Cir. 2002). Supreme Court precedent "demand[s] certainty" as to the factual basis for the earlier conviction, *Shepard*, 544 U.S. at 21, as it must if the *Almendarez-Torres* prior convictions exception to the *Apprendi* requirements is to survive. The Document here does not provide the requisite unequivocal proof.

I note that the inadequacy of the Document supplied by the prosecution was the result of lack of diligence, not unavailability of unequivocal proof. The 2002 conviction was, according to the Document, based on an "agreed statement of facts." That statement, assuming it showed that Strickland had committed child sexual abuse, would presumably have sufficed under *Shepard*.

### III.

The sentencing court in this case relied not only on the Document but also on two sexual offender registration forms. *See United States v. Strickland*, 556 F.3d 1069, 1071 (9th Cir. 2009). These non-judicial forms clearly fall outside the scope of the judicial documents approved in *Shepard* and *Snellenberger*.

*Shepard* limits the use of documentary evidence to "conclusive records made or used in adjudicating guilt," *Shepard*, 544 U.S. at 21. *Shepard* went on to explain that the requirement that "evidence of generic conviction be confined to the records of the convicting court approaching the certainty of the record of conviction in a generic crime State . . . was the heart of the decision" in *Taylor v. United States,* 495 U.S. 575 (1990), the progenitor of the modified categorical approach to prior convictions. *Shepard*, 544 U.S at 23.

A sex offender registration form is not a "record[ ] of the convicting court." It is filled out by a lay person, not by an official familiar with court proceedings; often, as here, it post-dates the conviction by a number of years; and it may be filled out in connection with a non-judicial matter in a distant jurisdiction. A sentencing court simply may not rely on non-judicial documents signed by a defendant for a non-judicial purpose years later.

Even if Strickland's signatures on the registration forms were viewed as admissions that he was convicted of a sexual offense, admissions that are not part of the record of conviction or the sentencing record cannot establish the crime of conviction. *Cisneros-Perez*, 465 F.3d at 393. Post-conviction admissions in sex offender registration forms, made outside the judicial process and likely made without the assistance of counsel, do not dictate the legal definition of the offense.

Moreover, the registration forms in the record in this case are not fairly read as admissions by Strickland himself. One

form is headed "Montana Department of Justice Sexual and Violent Offender Registration Form," followed by the admonition "Form must be completed by the agency." It is that form, apparently filled out by a state agency and not by Strickland, that checks "sexual" with regard to "offense type." It then goes on to record the Maryland offense as "2nd Degree Assault," *not* as a generic sexual offense. Although the form also identifies the "victim" as a 16-year-old step-son, that information goes to the underlying facts of the case, rather than the nature of the conviction, and so is not informative on the relevant question: what was Strickland *convicted* of. On an attached page, Strickland initialed various advisements and then signed. But the initialed advisements pertain to *both* sexual and violent offenses. So Strickland himself did not admit whether his offense was one or the other.

Strickland also signed a form from the City of Great Falls entitled "Change of Address for Sex Offender — None." That strangely titled form, on the page signed by Strickland, does not identify the particular offense triggering the signature. There is, as Chief Judge Kozinski notes, an *attached* data printout from the Montana Department of Justice. That printout says that the conviction was under a "non-Montana statute" specified as "Maryland Sexual Child Abuse." No statutory number or source of information is stated — and, of course, there *was* no "Maryland Sexual Child Abuse" statute at the relevant time, only a more general child abuse statute. So the printout is both inaccurate and not attested to by Strickland. We are left with the odd title of the Change of Address form, with nothing at all in Strickland's own words, as indicating what Strickland in fact signed.

Finally, the third form Strickland signed was a "Sex and Kidnapping Offender Registration Notification" from King County, Washington. The form contains three-and-a-half dense pages of instruction and covers offenses, including kidnapping, that are not sexual offenses. All Strickland signed was the statement that he "ha[s] read or had read to me and

received a copy of the Registration Notification, thereby informing me of the registration requirements." Nothing in that form indicates that Strickland was admitting to child sexual abuse.

The upshot is that even if these long-after-the fact forms could be relevant to the question of what Strickland was convicted of — which, under *Shepard* they cannot — they are ambiguous and partially inaccurate, do not include direct admissions by Strickland, and require judicial inference and reading between the lines before they can be interpreted as Chief Judge Kozinski would interpret them. Again, "[i]nferences, however, are insufficient under the modified categorical approach." *Cisneros-Perez v. Gonzalez*, 465 F.3d 386, 393 (9th Cir. 2006).

That the judge felt compelled to consider the registration forms to buttress the information in the docket sheet indicates that he doubted the reliability of the docket sheet. Yet, those forms cannot serve as a basis in whole or in part for the sentencing enhancement, as they lack the requisites acceptable to meet the exceedingly narrow exception to *Apprendi* for unequivocally established prior convictions.

## CONCLUSION

If Strickland was actually convicted of child sexual abuse, the government could have introduced the charging documents, agreed statement of facts, or other conviction records approved under *Shepard* to show that fact. The government instead offered several unreliable documents that do not, alone or in tandem, unequivocally establish the fact that Strickland was convicted of a sexual offense. The majority opinion, by permitting trial courts to "go[ ] beyond conclusive records made or used in adjudicating guilt," *Shepard*, 544 U.S. at 21, erodes the constitutional protections at the heart of our system of criminal adjudication.

REINHARDT, Circuit Judge, dissenting:

I concur in Judge Berzon's dissent. I write separately to register my strong objection to the majority's failure to rule upon the issue of the Montana sex offender registration forms. The three-judge panel erroneously relied on those forms in determining that Strickland's prior child abuse conviction constituted a sexual offense. We took this case en banc to decide whether the forms at issue and similar extra-judicial forms fit within the narrow category of documents that may be considered in determining whether a past conviction falls within a particular category of offense. As Judge Berzon persuasively explains, they do not. In my view, to fail entirely to address the issue that caused the court to go en banc constitutes an abuse of the en banc process. It allows future district courts and future panels of our court to repeat the *Strickland* panel's error, resulting in erroneous decisions which could easily be avoided by resolving the issue in this proceeding.

The issue is not a difficult one. Although the majority explicitly declines to reach it, the four dissenting judges agree that the forms may not be considered and there is no indication that any judge on the en banc court, other than our iconoclastic Chief Judge, approves of their use. The majority's duty was to resolve the question that caused the court to go en banc. It should have done so by holding that sex offender registration forms and similar extra-judicial forms may not be considered for purposes of the modified categorical approach. Instead, by avoiding the issue, it perpetuates exactly the kind of unnecessary confusion on an important issue that the en banc process is designed to avoid. The purpose of an en banc proceeding is not simply to determine whether a result in a particular case is correct, nor is an en banc court convened simply to second guess a three-judge panel. The reason for invoking the en banc process is to maintain the consistency of the law of the circuit and to resolve issues of exceptional importance. Fed. R. App. P. 35. Here, the en banc court fails in its essential obligation.